IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

E.S. et al,

Plaintiff,

vs.

State of Alaska, Dept of Health & Social
Services et al,

Defendant.

CASE NO: <u>1JU-18-00695CI</u>

RECEIVED

MAY 2 3 2018

Attorney General's Office
Juneau

**SUMMONS AND NOTICE TO BOTH
PARTIES OF
JUDICIAL ASSIGNMENT**

To Defendant: <u>State of Alaska, Dept of Health & Social Services</u>

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at <u>123 4th Street PO Box 114100   Juneau AK 99811</u> within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:
     Plaintiff's attorney or plaintiff (if unrepresented): <u>Joanna L Cahoon</u>
     Address: <u>3330 Arctic Blvd 103   Anchorage AK99503</u>

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number.  You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf, to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

### NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

This case has been assigned to Judge <u>M Jude Pate</u>.

(SEAL)

                               CLERK OF COURT

<u>  5/17/2018  </u>    By:  <u>      Sum Crandall      </u>
      Date                         Deputy Clerk

*The state or a state officer or agency named as a defendant has 40 days to file its answer.  If you have been served with this summons outside the United States, you also have 40 days to file your answer.

I certify that on   <u>5/17/18</u>
a copy of this order was mailed or delivered to:

Clerk:     <u>SCrandall</u>

Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/28/18   Page 1 of 66   Exhibit A, Page 1 of 66

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

E.S. through her guardians Mary and )
Steven Stassel, B.M. through his guardians )
Wayne and Sharon Mattingly, and K.H. )
through his guardian Robert Howard, )
for themselves and others similarly situated, )
                    )
            Plaintiffs, )
                    )
v.                       )
                    )
STATE OF ALASKA, DEPARTMENT OF )
HEALTH AND SOCIAL SERVICES, )
DIVISION OF SENIOR AND )
DISABILITIES SERVICES, and DUANE )
MAYES, in his official capacity as )
Division Director, )
                    )
            Defendants. )
                    )
_____ )

Case No. 1JU-18- 695 CI

CLASS ACTION COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND
DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

1.      This is a civil action for injunctive and declaratory relief brought by E.S. through

her guardians Mary and Steven Stassel, B.M. through his guardians Wayne and Sharon

Mattingly, and K.H. through his guardian Robert Howard, and those similarly situated by and

through their attorneys, the Disability Law Center of Alaska, against the State of Alaska,

Department of Health and Social Services ("DHSS"), Division of Senior and Disabilities

Services ("SDS"), and Director Duane Mayes, Defendants, for imposing a regulatory "soft cap"

of 12 hours per week of day habilitation without first obtaining CMS approval, first following

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 1 of 23

federal notice and comment requirements, or first setting up an exceptions process that conforms to federal person-centered planning requirements.

2.      Medicaid's Home and Community Based Waiver provides severely disabled Alaskans with services to live in their own homes instead of professionally-run facilities. See generally 42 U.S.C. § 1396n(c) and AS 47.07.045. Day habilitation is one such service that allows intellectually and developmentally disabled adults access to community settings to build self-help, socialization, and adaptive skills. In the fall of 2017, the defendants, in an effort to cut costs, imposed what they called a "soft cap" of 12 hours per week of day habilitation per person, with an exception for those who are at risk of institutionalization or have a health and safety need for the hours. In practice, however, the State has imposed a hard cap, denying exceptions to the plaintiffs and 96% of other disabled persons in Alaska who requested hours above the cap.

3.      The State implemented this cap against the plaintiffs and all other similarly situated individuals in violation of the Medicaid Act and its implementing regulations in three ways. First, the cap was put into effect six months before getting the necessary federal approval to do so as required by 42 C.F.R. § 441.304(d). Second, the State failed to provide a meaningful opportunity to comment on the proposed waiver amendment as required by 42 C.F.R. § 441.304(f). The State did so by misrepresenting the nature of the cap as "soft," misstating the rule for exceptions (making the exception appear to the public to be much easier to meet), and providing notice of the waiver changes 24 days *after* the regulation went into effect. Third, the cap violates the Medicaid Act's person-centered planning regulations, in 42 C.F.R. 441.301(c), by exclusively focusing on risk to health and safety and risk of institutionalization without reference to or consideration of other required factors.

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 2 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

4.      Because the "soft cap" on day habilitation was implemented in violation of the Medicaid Act's implementing regulations, jeopardizes the plaintiffs' health and safety, and risks their ability to remain at home, plaintiffs seek declaratory and injunctive relief declaring the cap on day habilitation violates the Medicaid Act's person-centered planning regulations and blocking the State from implementing the new "soft cap" regulation. In addition, plaintiffs seek to vacate the adverse day habilitation action letters sent to all waiver recipients between October 1, 2017 and the date the State finally lives up to its notice and comment obligations, which has not yet happened, or, at worst, March 20, 2018, the effective date of CMS's approval absent proper notice and comment.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under AS 22.10.020 (c) and (g).

6.      Venue is proper under AS 22.10.030 and Civil Rule 3(c).

## PARTIES

7.      E.S. is a 21-year-old woman with autism, limited verbal communication abilities, and substantial behavioral issues who returned to her family home five years ago with the help of services available under the Intellectual and Developmental Disabilities (IDD) waiver. As a result of the day habilitation cap, SDS has attempted to cut her day habilitation hours by 22.5 hours per week.  SDS's decision against E.S. was issued before March 20, 2018.

8.      B.M. is a 45-year-old man with an intellectual disability, autism, and bipolar disorder who is non-verbal. As a result of the day habilitation cap, SDS has attempted to cut his day habilitation hours by 8 hours per week.   SDS's decision against B.M. was issued before March 20, 2018.

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 3 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002      Fax 907-565-1000
1-800-478-1234

9. K.H. is a 58-year-old man who is nonverbal and experiences autism as well as an intellectual disability. As a result of the day habilitation cap, SDS has attempted to cut his day habilitation hours by 8 hours per week. SDS's decision against K.H. was issued before March 20, 2018.

10. The Division of Senior and Disabilities Services (SDS) is the agency within the Alaska Department of Health and Social Services that administers the Medicaid Waiver programs, specifically, the Intellectual and Developmental Disabilities waiver.

11. Defendant Duane Mayes is the Director of the Division of Senior and Disabilities Services and he is sued in his official capacity.

12. This Complaint refers to the defendants collectively as "the State."

## FACTUAL ALLEGATIONS

### A. Federal Medicaid Law

13. The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, authorizes federal financial support to states for medical assistance to low-income people who are aged, blind, disabled, or members of families with dependent children. The federal and state governments jointly fund Medicaid benefits. States administer Medicaid under federal standards, typically set out in federal regulations, by defining eligible beneficiary groups, types and ranges of services, payment level for services, and administrative rules.

14. Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c), permits a state to waive certain Medicaid requirements in order to furnish an array of home and community-based services (HCBS) that promote community living for Medicaid beneficiaries who would otherwise be qualified to get care through a nursing home or other institutional facility.

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 4 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002    Fax 907-565-1000
1-800-478-1234

15.     To implement a home and community-based waiver, a state must submit an initial waiver application to the U.S. Center for Medicare and Medicaid Services (CMS), acting on behalf of the Secretary of Health and Human Services, describing the waiver program design and how it will meet statutory and regulatory requirements.

16.     After the initial three-year approval period, each state operating a waiver must submit a five-year waiver renewal application.

17.     A state must implement the waiver as specified in the approved application.

18.     If the state wants to change the waiver while it is in effect, it must submit an amendment to CMS for its review and approval. If the amendment affects substantive rights, a state must not implement it until after the state has obtained federal approval.

B.     **Updates to Federal Medicaid Regulations in 2014**

19.     In 2014, CMS issued a new regulation (42 CFR §441.301(c)(1) et seq.) that requires all Medicaid-funded services be provided in settings that exhibit home and community-based characteristics and do not isolate recipients; the regulation highlights the need for opportunities to engage in community life, have full access to benefits of community living, and opportunities to receive services in the community to the same degree as people who do not receive home and community based services.

20.     The new rules ensure that states use home and community-based services waiver funding for programs that truly work to integrate people with disabilities into the community at every opportunity.

21.     The 2014 regulation also requires a "person-centered service plan" for each recipient, which reflects the services and supports that are important for the individual to meet

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 5 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

the needs identified through an assessment of functional need, as well as what is important to the individual with regard to preferences for the delivery of such services and supports.

## C.     Alaska's Home and Community Based Waiver Program

22.     The Alaska Legislature has implemented this state's Medicaid program so that "needy persons of this state who are eligible for medical care at public expense . . . should seek only uniform and high-quality care that is appropriate to their condition and cost-effective to the state and receive that care, regardless of race, age, national origin, or economic standing." AS 47.07.010.

23.     Alaska's HCBS 1915(c) waiver programs, including the Intellectual and Developmental Disabilities (IDD) Waiver, support the independence of Alaskans who experience physical or developmental disabilities by providing services in their homes and in the community rather than in an institution such as a nursing home.

24.     The goal of the IDD Waiver is to provide effective home and community-based supports in the amount, duration, scope, and frequency that will allow individuals to live as independently as possible in integrated community settings.

25.     The Alaska Department of Health and Social Services (DHSS) administers the waivers, and the DHSS Division of Senior and Disabilities Services (SDS) operates the waivers.

26.     Applicants access the waiver via private SDS-certified care coordinators who, in coordination with the individual and other team members, draft annual Plans of Care detailing what waiver and other services are needed to maintain the health and safety of the recipient and allow them to remain in their own home.

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 6 of 23

27.     SDS is responsible for exercising routine oversight of the Plan of Care to ensure that plans address assessed clinical and support needs; reflect the recipient's strengths and preferences for delivery of services and supports; identify the elements important to the recipient to achieve the quality of life the recipient wishes, including the recipient's goals and desired outcomes; identify the services and supports, paid and unpaid, that will assist the recipient to achieve the recipient's goals and desired outcomes; identify the providers of services and supports; identify the amount of services needed; document the service options considered by the recipients; discuss risk factors; and identify the people responsible for plan monitoring.

28.     SDS-certified home and community-based provider agencies deliver the services in the plan of care that are approved by the State.

**D.     Recent Limitations on Waiver Day Habilitation Services**

29.     Prior to the fall of 2017, SDS used a soft 15 hour per week cap on day habilitation for recipients in group homes and no cap on day habilitation for recipients living in their own homes.

30.     On April 12, 2017, SDS issued public notice of its intent to amend state regulations to implement cost containment measures; these proposed measures included new limits on day habilitation services based on average use of services across the state.

31.     The proposed regulation provides for a cap on day habilitation services with a two-part exception: "The department will not pay for more than 624 hours per year of any type of day habilitation services from all providers combined, unless the department approves a limited number of additional day habilitation hours that were (1) requested in a recipient's plan of

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 7 of 23

care; and (2) justified as necessary to (A) protect the recipient's health and safety; and (B) prevent institutionalization."

32.     Proposed changes to 7 AAC 130.260(c) including the 12-hour cap on day habilitation were open for public comment between April 12, 2017 and June 15, 2017.

33.     42 CFR 441.304(f)(2) provides that "[a] request for an amendment that involves a substantive change as determined by CMS, may only take effect on or after the date when the amendment is approved by CMS."

34.     Although CMS had yet to approve amending the IDD waiver to include service limits on day habilitation, on October 1, 2017, SDS began reviewing plans of care in accordance with 7 AAC 130.260(c), requiring recipients to prove both health and safety necessity *and* risk of institutionalization to receive day habilitation hours above the 12-hours-per-week "soft cap."

35.     42 C.F.R. §441.304(f) requires States to use a public input process for "any changes in the services or operations of the waiver" and requires that the process "be completed at a minimum of 30 days prior to implementation of the proposed change or submission of the proposed change to CMS, whichever comes first."

36.     Although the "soft" cap had been in effect for 24 days, on October 24, 2017, SDS published public notice of the proposed waiver amendment and opened public comment on the proposed amendment through November 27, 2017.

37.     In its October 24, 2017, public notice of the proposed IDD Waiver amendment, SDS provided for the 12-hour cap, but identified an either-or exception: "This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year... The cap is 'soft' in that the regulation allows approval in excess of the limit when requested for

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 8 of 23

individuals who are at risk of institutionalization within 30 days, *or* who have health and safety requirements affected by the limit, if justified in a plan of care or amendment." (emphasis added).

38.      Under this written proposal, a waiver participant may receive hours above the cap if either one of two conditions apply: (1) the individual is at risk of rapid institutionalization *or* (2) the individual has health and safety requirements affected by the limit – instead of both like the state regulation.

39.      Although, 42 C.F.R. §441.304(f) requires States to use a public input process for any waiver changes and "ensure meaningful opportunities for input…" the written proposal presented to the public did not conform to the state regulation as written or as applied by SDS.

40.      On January 4, 2018, SDS applied to CMS to amend its IDD waiver to approve the "soft" cap that it had already instituted through regulation.

41.      In February 2018, Duane Mayes, Director of Senior and Disabilities Services, presented at the annual Alaska Association on Developmental Disabilities meeting. Mr. Mayes reported that, as of the time of the February meeting, there had been 116 plan of care requests for day habilitation services over the cap since 7 AAC 130.260(c) had gone into effect and SDS had issued denial letters in all but 5 cases. In other words, implementation of the "soft" cap resulted in a *96% denial rate* for applicants seeking day habilitation hours above the cap.

42.      On March 9, 2018, SDS informed CMS it had changed "or" in the exception to the day habilitation cap to "and" to "comport with regulatory language." CMS did not object to the change. The correspondence does not include a discussion of whether the error was substantive.

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 9 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002      Fax 907-565-1000
1-800-478-1234

43. SDS did not give public notice regarding the allegedly mistaken inclusion of "or" in the original waiver amendment application and public notice announcement or the subsequent revision of the amendment to include "and."

44. On March 20, 2018, nearly six months after instituting the "soft" cap, CMS approved the State's amendment of the IDD waiver. The approval letter does not identify approval of any particular exception to the cap.

**E. Facts Related to Plaintiff E.S.**

45. E.S. is a 21-year-old woman who experiences autism. E.S. requires 1:1 supervision because she lacks judgment to protect herself from hazards, becomes anxious easily (resulting in severe behavioral outbursts), and has limited communication abilities. E.S. needs assistance communicating with others because she normally only communicates with trusted and familiar people such as her family and long-term service providers. However, when E.S. is anxious or frustrated she cannot communicate her needs even to those closest to her. For E.S., increased anxiety can manifest in meltdowns and aggression as demonstrated by her increased undesirable behaviors in 2011 that culminated in E.S.'s admission to API and, because her family could no longer control her behavior, subsequent transfer to the National Deaf Academy.

46. Since August of 2012, E.S. has been successfully integrated into the community, living at home with her parents and receiving direct services including supported living, respite, and day habilitation. E.S. continues to rely on 1:1 supervision for her activities outside the home which include art classes, walks, drives with music, horseback riding, going to the gym, and bowling. These activities were developed in collaboration with the Complex Behavior Collaborative, Applied Behavioral Analysis therapists, and mental health professionals to help

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 10 of 23

relieve E.S.'s stress and anxiety. Her time out in the community is critical because, when E.S. feels bored and alone at home, her anxiety increases.

47. On January 9, 2018, the Division issued an Adverse Action letter informing E.S. that her day habilitation services would be cut from her previous 22.5 hours per week to just 12 hours per week, including transportation, with no alternative service provided to cover that time, as a result of the new regulation. The letter states in part that "[w]hile the division acknowledges that [E.S.] benefits from engaging in day habilitation activities and maintaining her daily routine, the [Plan of Care] does not demonstrate why the additional 22.5 hours per week for 52 weeks of Individual Day Habilitation are necessary to protect [E.S.'s] health and safety and prevent institutionalization." [Exhibit 1, at 2].

48. E.S. appealed, and her fair hearing is pending before the Office of Administrative Hearings.

F.    **Facts Related to Plaintiff B.M.**

49. B.M. is a 45-year-old man with an intellectual disability, autism, and bipolar disorder who is non-verbal. B.M. requires 1:1 supervision when out in the community because, when he is over stimulated, B.M.'s behavior may become erratic, impulsive, and hyperactive. For example, when experiencing a manic phase, B.M. may bolt from his environment, potentially physically assaulting anyone near his escape route. In the past, B.M. has been institutionalized due to his tendency to act out against others when over stimulated.

50. B.M. has lived with the same family habilitation provider since 1997 and has lived in his current group home since 2010. Because B.M. requires 1:1 supervision, B.M.'s group

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 11 of 23

home provider cannot take B.M. and his roommates out in the community. In order to access the community, B.M. relies on his day habilitation providers from Hope Community Resources.

51.     As anxiety medications have limited effectiveness for B.M., his symptoms are partially controlled by physical activity and day habilitation activities including equine therapy, swimming, church activities, walking and visiting coffee shops.

52.     For several years, B.M. received 20 hours of day habilitation. In their most recent Plan of Care, B.M.'s team again requested 20 hours of day habilitation and explained that, in the team's assessment, B.M. would require institutionalization without his current level of services. The Plan of Care included a letter of support from a treating physician explaining that even a slight reduction in day habilitation would inevitably lead to the potential for B.M. to harm himself or others.

53.     On February 12, 2018, the Division issued an Adverse Action letter informing B.M. that his day habilitation services would be cut from 20 hours per week to 12 hours per week. The letter states "[B.M.'s] team is requesting Day habilitation in excess of the regulatory cap and has not demonstrated that the request meets the regulatory requirement…" [Exhibit 2, at 2].

54.     B.M. appealed, and his fair hearing is pending before the Office of Administrative Hearings.

## G.     Facts Related to Plaintiff K.H.

55.     K.H. is a 58-year-old man that experiences an intellectual disability as well as autism. After being institutionalized as a child, K.H. stopped speaking. He has not spoken since he was 12 years old.

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 12 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

56. K.H. moved in with his current family habilitation provider in 2006 and he now lives with other individuals that experience disabilities. Before moving into his current home, K.H. exhibited significant self-harming behaviors such as banging his head against walls and isolating himself to a degree that was detrimental to his mental health. Since moving into his current home, K.H. has become more social but he still spends a substantial amount of time alone and tends towards activities such as habitually rearranging picture cards.

57. K.H. worked for years and he enjoys going out into the community where he has opportunities to walk and work on his social skills while grocery shopping, meeting friends and going to coffee shops. In the last year, K.H. has experienced a reoccurrence of some of his self-harming behaviors such as bending his fingers back when frustrated. K.H.'s care team fears that he may regress to other past behaviors should his time in the community be reduced.

58. Because K.H. requires 1:1 supervision when out in the community, it is difficult for his group home provider to take K.H. on outings with the other group home residents. K.H. relies on his day habilitation provider to access the community because he has a tendency to engage in inappropriate behaviors such as approaching strangers to feel the texture of their clothing and grabbing things that do not belong to him. In addition, K.H. does not like loud noises or to be startled or touched. To safely interact in the community, K.H. requires an experienced provider that can interpret his non-verbal cues indicating elevated anxiety.

59. On January 26, 2018, the Division issued an Adverse Action letter informing K.H. that his day habilitation services would be cut from his previous 20 hours per week to 12 hours per week as a result of the new regulation. The letter states that requesting hours above the cap because "[K.H.] always has the potential to regress to past behaviors without the supports he

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 13 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234   Fax 907-565-1000

receives, as the behaviors can only be managed to become latent, and are not cured," did not "adequately explain how additional hours are necessary to protect the recipient's health and safety and prevent institutionalization." [Exhibit 3, at 1-2]. Although the letter acknowledges the POC's statement "that the home does not allow for [K.H.'s] provider to take [K.H.] out with his housemates," it inexplicably concludes "there is an expectation that the home provider is also providing opportunities for community integration…. it is the provider's responsibility to structure the home to meet the needs of all recipients, including one-to-one time in the community." [Exhibit 3, at 2].

60.     K.H. appealed, and his fair hearing is pending before the Office of Administrative Hearings.

## CLASS ACTION ALLEGATIONS

61.     Pursuant to Alaska Rules of Civil Procedure 23(a) and 23 (b)(2), Plaintiffs bring this action on their own behalf, and on behalf of all others similarly situated. The purported class, which these Plaintiffs represent, is composed of all Alaskans who qualify or may qualify for services under the IDD waiver, and who need or may need day habilitation in excess of 12 hours per week.

62.     The persons in this purported class are so numerous that joinder of all such persons is impracticable. Hundreds of Alaskans qualify for services under the IDD waiver and currently receive day habilitation services and, as of February 2018, at least 111 Alaskans have applied for and been denied day habilitation services exceeding 12 hours per week.

63.     There are issues of fact and questions of law common to the class. The common legal issues include, but are not limited to, the following:

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 14 of 23

A.    Whether the State had authority to operate the 12-hour cap on day habilitation before March 20, 2018, when CMS gave approval for the State Plan Amendment.

B.    Whether the State properly provided public notice and comment regarding its change in the exceptions process for the 12- hour cap on day habilitation as required by federal regulations.

C.    Whether the 12-hour cap on day habilitation is consistent with the federal person-centered planning regulations.

## FIRST CAUSE OF ACTION: VIOLATION OF 42 C.F.R. § 441.304(d)(2)

64.    Plaintiffs reallege and incorporate herein by reference all allegations set forth above.

65.    Plaintiffs' right to receive the Medicaid Waiver benefits to which they are entitled is a right secured by the laws of the United States, including, but not limited to, the Medicaid Act.

66.    In violation of 42 U.S.C. § 1983, defendants have subjected plaintiffs to the deprivation of their rights under color of a statute or regulation.

67.    42 C.F.R. §441.304(d)(2) states that, with regard to state Waiver plans, "A request for an amendment that involves a substantive change as determined by CMS, may only take effect on or after the date when the amendment is approved by CMS, and must be accompanied by information on how the State has assured smooth transitions and minimal effect on individuals adversely impacted by the change.."

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 15 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
1-800-478-1234    907-565-1002    Fax 907-565-1000

68.     Subsection (d)(1) defines substantive as including but not limited to: "revisions to services available under the waiver including elimination or reduction of services, or reduction in the scope, amount, and duration of any service, a change in the qualifications of service providers, changes in rate methodology or a constriction in the eligible population."

69.     On October 1, 2017, 7 AAC 130.260(c), limiting day habilitation services, went into effect. [Exhibit 1, at 2]. The regulation provides: "The department will not pay for more than 624 hours per year of any type of day habilitation services from all providers combined, unless the department approves a limited number of additional day habilitation hours that were (1) requested in a recipient's plan of care; and (2) justified as necessary to (A) protect the recipient's health and safety; *and* (B) prevent institutionalization." (emphasis added).

70.     According to CMS, SDS did not submit an application to amend the IDD waiver, in part to include the soft cap the State had already instituted, until January 4, 2018. [Exhibit 4, at 1]

71.     SDS's amendment application, as posted for public notice, states: "This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year. . . The cap is 'soft' in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, *or* who have health and safety requirements affected by the limit, if justified in a plan of care or amendment." [Exhibit 5] (emphasis added).

72.     On March 9, 2018, SDS informed CMS it had changed "or" in the exception to the day habilitation cap to "and" in order to "comport with regulatory language." CMS did not

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 16 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

object to the change. [Exhibit 6, at 1]. The correspondence does not include a discussion of whether the error was substantive.

73. On, March 20, 2018 - six months after the changes included in 7 AAC 130.260(c) went into effect - CMS approved the amendments. [Exhibit 4, at 1].

74. By enforcing a service limit on day habilitation through state regulation prior to CMS approving that change to the state's IDD waiver plan, the State violated 42 C.F.R. §441.304(d)(2) and the Medicaid Waiver statute itself, 42 U.S.C. § 1396n(c).

75. As direct beneficiaries of the IDD waiver program, plaintiffs and those similarly situated have suffered harm as a result of the state imposing a service limit to day habilitation prior to CMS approval.

76. Plaintiffs and all other similarly situated individuals with reduction notices issued prior to CMS approval March 20, 2018, are entitled to have their day habilitation reductions vacated.

## SECOND CAUSE OF ACTION: VIOLATION OF 42 C.F.R. § 441.304(f)

77. Plaintiffs reallege and incorporate herein by reference all allegations set forth above.

78. Plaintiffs' right to receive the Medicaid Waiver benefits to which they are entitled is a right secured by the laws of the United States, including, but not limited to, the Medicaid Act.

79. In violation of 42 U.S.C. § 1983, defendants have subjected plaintiffs to the deprivation of their rights under color of a statute or regulation.

80. 42 C.F.R. §441.304(f) states:

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 17 of 23

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002    Fax 907-565-1000
1-800-478-1234

The agency must establish and use a public input process, for any changes in the services or operations of the waiver.

(1) This process must be described fully in the State's waiver application and be sufficient in light of the scope of the changes proposed, to ensure meaningful opportunities for input for individuals served, or eligible to be served, in the waiver.

(2) This process must be completed at a minimum of 30 days prior to implementation of the proposed change or submission of the proposed change to CMS, whichever comes first.

(3) This process must be used for both existing waivers that have substantive changes proposed, either through the renewal or the amendment process, and new waivers…

81.     Subsection (d)(1) defines substantive as including but not limited to: "revisions to services available under the waiver including elimination or reduction of services, or reduction in the scope, amount, and duration of any service, a change in the qualifications of service providers, changes in rate methodology or a constriction in the eligible population."

82.     On October 24, 2017, 24 days after the "soft" cap went into effect, SDS published public notice of the proposed waiver amendment. SDS opened public comment through November 27, 2017. [Exhibit 7, at 2]

83.     In its public notice, SDS included a copy of the proposed amendment, reading: "The cap is 'soft' in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, *or* who have health and safety requirements affected by the limit, if justified in a plan of care or amendment." [Exhibit 5] (emphasis added).

84.     In February 2018, Duane Mayes, Director of Senior and Disabilities Services, presented at the annual Alaska Association on Developmental Disabilities meeting. Mr. Mayes

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234     Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 18 of 23

reported that, as of the time of the February meeting, there had been 116 plan of care requests for day habilitation services over the cap since 7 AAC 130.260(c) had gone into effect. Mr. Mayes reported that SDS had issued denial letters in all but 5 cases – amounting to a 96% denial rate for applicants seeking day habilitation hours above the "soft" cap. [Exhibit 8, at 4].

85.     The final version of the State's CMS waiver amendment application, dated March 9, 2018 states, "[t]he proposed amendments to Alaska's four approved waivers generated no public comment." [Exhibit 9]

86.     By providing notice after the cap went into effect, mischaracterizing the nature of the cap as "soft," and substantively misstating the requirement for exceptions to the cap in its public notice announcement, the State failed to ensure meaningful opportunity for input for individuals served, or eligible to be served, by the IDD waiver. The State thus violated 42 C.F.R. §441.304(d)(2) and the Medicaid Waiver statute itself, 42 U.S.C. § 1396n(c).

87.     As direct beneficiaries of the IDD waiver program, plaintiffs have suffered harm as a result of the state substantively amending its waiver plan without following public notice and comment requirements to ensure meaningful opportunities to comment.

88.     Plaintiffs and those similarly situated are entitled to a temporary injunction and declaratory and injunctive relief from implementation of the amended waiver absent proper notice and comment.

## THIRD CAUSE OF ACTION: VIOLATION OF 42 C.F.R. § 441.301(c)

89.     Plaintiffs reallege and incorporate herein by reference all allegations set forth above.

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 19 of 23

90.     Plaintiffs' right to receive the Medicaid Waiver benefits to which they are entitled

is a right secured by the laws of the United States, including, but not limited to, the Medicaid

Act.

91.     In violation of 42 U.S.C. § 1983, defendants have subjected plaintiffs to the

deprivation of their rights under color of a statute or regulation.

92.     42 C.F.R. §441.301(c)(2) states:

The Person-Centered Service Plan. The person-centered service plan must reflect the
services and supports that are important for the individual to meet the needs identified
through an assessment of functional need, as well as what is important to the individual
with regard to preferences for the delivery of such services and supports. Commensurate
with the level of need of the individual, and the scope of services and supports available
under the State's 1915(c) HCBS waiver, the written plan must:

(i) Reflect that the setting in which the individual resides is chosen by the individual.
The State must ensure that the setting chosen by the individual is integrated in, and
supports full access of individuals receiving Medicaid HCBS to the greater
community, including opportunities to seek employment and work in competitive
integrated settings, engage in community life, control personal resources, and receive
services in the community to the same degree of access as individuals not receiving
Medicaid HCBS.

(ii) Reflect the individual's strengths and preferences.

(iii) Reflect clinical and support needs as identified through an assessment of
functional need.

(iv) Include individually identified goals and desired outcomes.

(v) Reflect the services and supports (paid and unpaid) that will assist the individual
to achieve identified goals, and the providers of those services and supports, including
natural supports. Natural supports are unpaid supports that are provided voluntarily to
the individual in lieu of 1915(c) HCBS waiver services and supports.

(vi) Reflect risk factors and measures in place to minimize them, including
individualized back-up plans and strategies when needed.

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002
1-800-478-1234    Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 20 of 23

(vii) Be understandable to the individual receiving services and supports, and the individuals important in supporting him or her. At a minimum, for the written plan to be understandable, it must be written in plain language and in a manner that is accessible to individuals with disabilities and persons who are limited English proficient, consistent with § 435.905(b) of this chapter.

(viii) Identify the individual and/or entity responsible for monitoring the plan.

(ix) Be finalized and agreed to, with the informed consent of the individual in writing, and signed by all individuals and providers responsible for its implementation.

(x) Be distributed to the individual and other people involved in the plan.

(xi) Include those services, the purpose or control of which the individual elects to self-direct.

(xii) Prevent the provision of unnecessary or inappropriate services and supports.

(xiii) Document that any modification of the additional conditions, under paragraph (c)(4)(vi)(A) through (D) of this section, must be supported by a specific assessed need and justified in the person-centered service plan. The following requirements must be documented in the person-centered service plan:

    (A) Identify a specific and individualized assessed need.

    (B) Document the positive interventions and supports used prior to any modifications to the person-centered service plan.

    (C) Document less intrusive methods of meeting the need that have been tried but did not work.

    (D) Include a clear description of the condition that is directly proportionate to the specific assessed need.

    (E) Include a regular collection and review of data to measure the ongoing effectiveness of the modification.

    (F) Include established time limits for periodic reviews to determine if the modification is still necessary or can be terminated.

    (G) Include informed consent of the individual.

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234   Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 21 of 23

(H) Include an assurance that interventions and supports will cause no harm to the individual. (emphasis added)

93.     On March 2, 2018, SDS replied to a set of questions posed by CMS (referred to as an RAI) regarding the waiver amendments. [Exhibit 10, at 1]. One question states in part "…what steps will the state take to ensure that the individual's needs can be met within the limit?" SDS's reply did not address how individual needs would be met, rather SDS explained how the Department arrived at the 12-hour cap and states the Department's expectation that "the soft cap is unlikely to affect most recipients." [Exhibit 10, at 5].

94.     Under the person-centered planning regulations, services such as day habilitation must be provided with reference to a person-centered plan, which includes considerations far beyond simply health, safety, and the risk of institutionalization.

95.     As direct beneficiaries of the IDD waiver program, plaintiffs have suffered harm as a result of the state imposing limits on day habilitation that are not allowable as a matter of person-centered planning. The State has violated 42 C.F.R. §441.302(c) and the Medicaid Waiver statute itself, 42 U.S.C. § 1396n(c).

96.     Plaintiffs and those similarly situated are entitled to a temporary injunction and declaratory and injunctive relief from implementation of the amended waiver absent exceptions that embody person-centered planning principles.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiffs pray for the following relief and remedies from the Court:

1.   Assume jurisdiction over this action and maintain continuing jurisdiction until defendants are in full compliance with every order of this Court;

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002     Fax 907-565-1000
1-800-478-1234

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 22 of 23

2. Vacate all day habilitation adverse action letters sent to waiver recipients between October 1, 2017 and whatever future date the State perfects notice and comment as required by the Medicaid Act and its implementing federal regulations. Alternatively, vacate all day habilitation adverse action letters sent to waiver recipients between October 1, 2017, and March 20, 2018, the date CMS approved the waiver amendments.

3. Declare that the Department's "soft cap" regulation as set forth above violates the Medicaid Act's person-centered planning regulations.

4. Grant a temporary restraining order and permanent injunction under Civil Rule 65 enjoining defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from implementing the "soft cap" in 7 AAC 130.260(c); and

5. Grant plaintiff the costs of this action and reasonable attorney's fees, and all other and further relief as the Court deems to be just and equitable.

DATED: May 7, 2018

Respectfully submitted,

Joanna Cahoon (ABA #1405034)
Mark Regan (ABA #8409081)
Disability Law Center of Alaska
3330 Arctic Blvd,, Ste.103
Anchorage, AK 99503
Telephone: 907-565-1002
Facsimile: 907-565-1000

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002
1-800-478-1234   Fax 907-565-1000

E.S. et al. v. State of Alaska, 1JU-18-_____ CI
Class Action Complaint for TRO and Declaratory Relief
Page 23 of 23

THIS MATTER IS FORMALLY ASSIGNED TO
Jude Pate
SUPERIOR COURT JUDGE



THE STATE
*of* ALASKA

GOVERNOR BILL WALKER

Department of
Health and Social Services

SENIOR AND DISABILITIES SERVICES
Director's Office

550 W 8th Avenue
Anchorage, AK 99501
Main: 907.269.3666
Toll free: 800.478.9996
Fax: 907.269.3688

January 9, 2018

*CERTIFIED MAIL / RETURN RECEIPT*

*7016 2710 0000 2760 0720*



Subject: Denial of IDD Home and Community Based Waiver Service

RE:           DOB: 3/26/1997

Dear

I am writing regarding the Plan of Care renewal submitted on          behalf for services funded under the Intellectual and Developmental Disabilities (IDD) Medicaid Home and Community Based Waiver. On 12/14/2017 Senior and Disabilities Services (SDS) received the proposed renewal that is attached for your review. The following services will be approved as requested:

Approved

1. Supported Living: 5,268 units (approximately 25 hours per week, 52 weeks)
2. Individual Day Habilitation: 2,496 units (approximately 12 hours per week, 52 weeks)
3. Agency Based Daily Respite: 14 units (14 days over 52 weeks)

Senior and Disabilities Services (SDS) denies the following item(s) under the authority of 7 AAC 130.217 and 7 AAC 130.260.

Denied

1. Individual Day Habilitation: 4,690 units ( approximately 22.5 hours per week, 52 weeks)

Regulations can be found at: http://dhss.alaska.gov/dsds/Pages/regulationpackage.aspx.

EXHIBIT __1__

Page __1__ of __3__

The proposed renewal presents a request for about 35 hours per week for 52 weeks of Individual Day Habilitation, about 25 hours per week for 52 weeks of Supported Living, and 14 days over 52 weeks of Agency Based Daily Respite.

Effective October 1, 2017 per regulation 7 AAC 130.260(c), "the department will not pay for more than 624 hours per year of any type of day habilitation services from all providers combined, unless the Department approves a limited number of additional Day Habilitation hours that is requested in a recipient's plan of care and justified as necessary to protect the recipient's health hand safety and to prevent institutionalization." An E-alert was sent out Monday, September 11, 2017 regarding this change.

According to the narrative presented in her POC renewal, █████ continues to reside in a safe and loving environment with her parents, "she continues to live in her parent's home in Anchorage. She shared that she loves her home and family, and would like to continue to live there as long as she can" (page 9). The narrative in the POC renewal emphasizes █████ challenging behaviors resulting from changes or interruptions to her routine, as the reasons for requesting the previously approved level of Day Habilitation. According to the POC renewal, █████ has been stable and has made progress managing her anxieties and frustrations to routine changes. "█████ has matured over this past plan year. She is learning to communicate her needs, desires, and anxieties in real time" (page 15).

While the division acknowledges that █████ benefits from engaging in Day Habilitation activities and maintaining her daily routine, the POC does not demonstrate why the additional 22.5 hours per week for 52 weeks of Individual Day Habilitation are necessary to protect █████ health and safety and prevent institutionalization. █████ has a strong natural support and she regularly attends the ACE/ACT program where "she looks forward to participating daily, and they too are happy with her progress and attendance" (page 9).

Additionally, the POC presents no supporting information as to why █████ is unable to benefit from other community resources. █████ overall approved level of service, combined with natural, educational, and other community supports is of sufficient amount, scope, and duration to meet her needs and achieve the intent of the POC as presented. Therefore, the request for the additional 22.5 hours per week for 52 weeks of Individual Day Habilitation service over the 12 hours per week allowable by regulation are denied due to regulatory compliance and lack of sufficient supporting information.

If you disagree with the decision outlined above, you have the right to appeal the decision. More information about requesting a formal appeal and the fair hearing process can be found at: http://dhss.alaska.gov/dhcs/Documents/publications/Fair_Hearings.pdf. Please see the Department of Health and Social Services Notice of Recipient Fair Hearing Rights document enclosed with this letter for contact information on how to schedule a fair hearing to appeal this decision.

Sincerely,

Eli Haroun

Eli S. Haroun Q.I.D.P, BSW, MBA
Health Program Manager I
Senior and Disabilities Services (SDS)

Enclosures: Plan of Care/Pan of Care Amendment

EXHIBIT 1
Page 2 of 3

Department of Health and Social Services Notice of Recipient Fair Hearing Rights document

cc:   Maureen Harwood, Health Program Manager IV, Senior and Disabilities Services
      Caitlin Rogers, Health Program Manager III, Senior and Disabilities Services
      Fair Hearing Representative, Recipient Services Dept., Conduent, P.O. Box 240808,
      Anchorage, AK 99524, FairHearings@conduent.com
      Bridgett Hites, Care Coordinator, Aurora Advocacy LLC
      Michele Girault, Program administrator, Hope Community Resources, Inc.



THE STATE
*of* **ALASKA**

GOVERNOR BILL WALKER

**Department of
Health and Social Services**

SENIOR AND DISABILITIES SERVICES
Director's Office

550 W 8ᵗʰ Avenue
Anchorage, AK 99501
Main: 907.269.3666
Toll free: 800.478.9996
Fax: 907.269.3688

February 12, 2018

*CERTIFIED MAIL / RETURN RECEIPT*
70162710000027600768



Subject:  Denial of IDD Home and Community Based Waiver Service

RE: ▮▮▮▮▮▮▮▮▮▮                       DOB: 11/26/1972

Dear ▮▮▮▮▮▮▮▮

I am writing regarding the Plan of Care (POC) renewal submitted on ▮▮▮▮ behalf for services funded under the Intellectual and Developmental Disabilities (IDD) Medicaid Home and Community Based Waiver. On January 17, 2018, Senior and Disabilities Services (SDS) received the proposed renewal that is attached for your review. The following services will be approved as requested:

Approved

1.  Family Habilitation: 365 Units (365 days over 52 weeks)
2.  Individual Day Habilitation: 2,496 units (12 hours per week, 52 weeks)
3.  Hourly Respite: 2,080 Units (10 hours over 52 weeks)
4.  Daily Respite: 14 units (14 days over 52 weeks)

Senior and Disabilities Services (SDS) denies the following item under the authority of 7 AAC 130.217, and 7 AAC 130.265.

Denied

1.  Individual Day Habilitation: 1,664 units (Additional 8 hours per week, 52 weeks)

Regulations can be found at: http://dhss.alaska.gov/dsds/Pages/regulationpackage.aspx.

The proposed POC renewal requests the following services: 365 days for 52 weeks of Family Habilitation, 20 hours per week for 52 weeks of Individual Day Habilitation, 10 hours per week for 52 weeks of Agency Based Respite, and 14 days over 52 weeks of Agency Based Daily Respite. Two additional supporting documents were provided and were reviewed by the division.

EXHIBIT 2
Page 1 of 2



Effective October 1, 2017 per regulation 7 AAC 130.260(c), "the department will not pay for more than 624 hours per year of any type of day habilitation services from all providers combined, unless the Department approves a limited number of additional Day Habilitation hours that is requested in a recipient's plan of care and justified as necessary to protect the recipient's health and safety and to prevent institutionalization." ████████ am is requesting Day Habilitation in excess of the regulatory cap and has not demonstrated that the request meets the regulatory requirement, therefore 1,664 additional units of Individual Day Habilitation are denied.

If you disagree with the decision outlined above, you have the right to appeal the decision. More information about requesting a formal appeal and the fair hearing process can be found at: http://dhss.alaska.gov/dhcs/Documents/publications/Fair_Hearings.pdf. Please see the Department of Health and Social Services Notice of Recipient Fair Hearing Rights document enclosed with this letter for contact information on how to schedule a fair hearing to appeal this decision.

Sincerely,

Esther Hayes

Esther Hayes
Health Program Manager I
Senior and Disabilities Services (SDS)

Enclosures:   Plan of Care/or Plan of Care Amendment
                     Department of Health and Social Services Notice of Recipient Fair Hearing Rights document

cc:     Maureen Harwood, Health Program Manager IV, Senior and Disabilities Services
          Caitlin Rogers, Health Program Manager III, Senior and Disabilities Services
          Fair Hearing Representative, Recipient Services Dept., Conduent, P.O. Box 240808, Anchorage,
          AK 99524, FairHearings@conduent.com
          Chuck Wright, Care Coordinator, Quintessence Planning and Care Coordination, LLC- DSM
          Michele Girault, Program Administrator, Hope Community Resources

EXHIBIT 2
Page 2 of 2



THE STATE
of ALASKA
GOVERNOR BILL WALKER

Department of
Health and Social Services

SENIOR AND DISABILITIES SERVICES
Director's Office

550 W.8th Avenue
Anchorage, AK 99501
Main: 907.269.3666
Toll free: 800.478.9996
Fax: 907.269.3688

January 26, 2018

*CERTIFIED MAIL / RETURN RECEIPT*

Subject: Denial of IDD Home and Community Based Waiver Service

RE: ▓▓▓▓▓▓▓▓▓        DOB: 04/06/1960

Dear ▓▓▓▓

I am writing regarding the Plan of Care submitted on ▓▓▓▓ behalf for services funded under the Intellectual and Developmental Disabilities (IDD) Medicaid Home and Community Based Waiver. On 01/10/2018 Senior and Disabilities Services (SDS) received the proposed plan of care that is attached for your review. The following services will be approved as requested:

Approved

1. Family Habilitation: 365 units (365 days over 52 weeks)
2. Individual Day Habilitation: 2,496 units (12 hours per week, 52 weeks)
3. Hourly Respite: 2,080 units (520 hours over 52 weeks)
4. Daily Respite: 14 units (14 days over 52 weeks)

Senior and Disabilities Services (SDS) denies the following item(s) under the authority of 7 AAC 130.200, 7 AAC 130.217, 7 AAC 130.265, and 7 AAC 130.260

Denied

1. Individual Day Habilitation: 1,664 units (8 additional hours per week, 52 weeks)

Regulations can be found at: http://dhss.alaska.gov/dsds/Pages/regulationpackage.aspx.

Effective October 1, 2017 per regulation 7 AAC 130.260(e), "the department will not pay for more than 624 hours per year of any type of day habilitation services from all providers combined, unless the Department approves a limited number of additional Day Habilitation hours that is requested in a recipient's plan of care and justified as necessary to protect the recipient's health and safety and to prevent institutionalization." Justification for the request above the regulatory cap states that ▓▓▓▓ "always has the potential to regress to past behaviors without the supports he receives, as the behaviors can only be managed to become latent, and are not cured" (pg. 12). This justification does not adequately explain how



additional hours are necessary to protect the recipient's health and safety and prevent institutionalization. Furthermore, page 6 of the POC states that ▓▓▓▓▓ family habilitation care provider "has an extensive background in behavioral health and autism, has worked in this field for many years, and is very well qualified to provide ▓▓▓ with the structure and support he needs."

Since ▓▓▓▓ receives 365 days of Family Habilitation services, there is an expectation that the home provider is also providing opportunities for community integration. Although the POC states that the home does not allow for his provider to take ▓▓▓▓ out with his housemates, it is the provider's responsibility to structure the home to meet the needs of all recipients, including one-to-one time in the community. There was also no information presented to indicate that the team researched and sought out other community resources that could be available to ▓▓▓▓▓.

The department determines that 12 hours per week for 52 weeks of Individual Day Habilitation is of sufficient amount, scope, duration to protect ▓▓▓▓▓ health and safety and prevent institutionalization. The additional 8 hours per week for 52 weeks of Day Habilitation services are denied due to regulatory non-compliance.

If you disagree with the decision outlined above, you have the right to appeal the decision. More information about requesting a formal appeal and the fair hearing process can be found at: http://dhss.alaska.gov/dhcs/Documents/publications/Fair_Hearings.pdf. Please see the Department of Health and Social Services Notice of Recipient Fair Hearing Rights document enclosed with this letter for contact information on how to schedule a fair hearing to appeal this decision.

Sincerely,

*Joanna Croxton*
Joanna Croxton
Health Program Manager II
Senior and Disabilities Services (SDS)

Enclosures:   Plan of Care
              Department of Health and Social Services Notice of Recipient Fair Hearing Rights document

cc:   Maureen Harwood, Health Program Manager IV, Senior and Disabilities Services
      Caitlin Rogers, Health Program Manager III, Senior and Disabilities Services
      Fair Hearing Representative, Recipient Services Dept., Conduent, P.O. Box 240808, Anchorage,
      AK 99524, FairHearings@conduent.com
      Chuck Wright, Care Coordinator, Quintessence Planning & Care Coordination –DSM
      Eric Gurley, Program Administrator, Hope Community Resources

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Seattle Regional Office
701 Fifth Avenue, Suite 1600, MS/RX-200
Seattle, WA 98104



Division of Medicaid & Children's Health Operations

March 20, 2018

Valerie Davidson, Commissioner
Department of Health and Social Services
3601 C Street, Suite 902
Anchorage, Alaska 99503

RE: Approval of 1915 (c) Home and Community Based Services (HCBS) Waiver
AK.0260.R05.02

Dear Ms. Davidson:

The Centers for Medicare & Medicaid Services (CMS) is approving Alaska's §1915(c) People
with Intellectual and Developmental Disabilities Waiver amendment, CMS Transmittal Number
AK.0260.R05.02. Please use this number in future correspondence relevant to this amendment
request.

This amendment, submitted on January 4, 2018 made the following revisions:

- Amends the Brief Waiver Description to clarify the roles of the state and other entities;
- Updates Appendix A to reflect the relationship between Senior and Disabilities Services,
  providing waiver services management, and the Commissioner's Office in its role as the State
  Medicaid Plan Director;
- Amends Appendix B to include Reserved Capacity in the unduplicated number of individuals, to
  allow transfer from another waiver to this waiver if a recipient's health and safety can no longer
  be guaranteed on the original waiver, and to clarify the processes for selection of applicants and
  evaluating level of care;
- Amends Appendix C to remove Personal Emergency Response Systems from Specialized
  Medical Equipment;
- Amends Appendix C to avoid duplication between waiver and State Plan services, the applicant's
  initial waiver application and the participant's annual plan of care are removed as care
  coordination waiver services;
- Amends Appendix C to include service limits on Day Habilitation;
- Amends Appendix G to update critical incident reporting and response procedures, per current
  regulation and practice;
- Amends Appendix I to update financial accountability procedures, to reflect current practice;

EXHIBIT 4
Page 1 of 2

- Amends Appendix J to remove utilization estimates for Personal Emergency Response Systems from Specialized Medical Equipment; and
- Corrects reporting details of several Quality Improvement performance measures in Appendices C, D, G and I.

The AK.0260.R05.02 waiver amendment continues to be cost-neutral and is approved effective March 20, 2018.

The CMS appreciates the efforts and cooperation of Alaska's Division of Senior and Disability Services leadership and staff throughout this Waiver amendment review process. If there are any questions concerning this approval, please contact me or your staff may contact Shante Abarabar at (206) 615-2346 or via Email at shante.abarabar@cms.hhs.gov.

Sincerely,

*David L. Meacham*

Digitally signed by David L. Meacham -S
DN: c=US, o=U.S. Government, ou=HHS, ou=CMS, ou=People, 0.9.2342.19200300.100.1.1=20000418 58, cn=David L. Meacham -S
Date: 2018.03.21 21:27:59 -07'00'

David L. Meacham
Associate Regional Administrator

cc:
Duane Mayes, Division Director, Division of Senior and Disability Services
Deb Etheridge, Deputy Director, Division of Senior and Disability Services

| | |
|---|---|
| Last Name: | Sherwood |
| First Name: | Jon |
| Title: | Deputy Commissioner for Medicaid and Health Care Policy |
| Agency: | Department of Health and Social Services |
| Address: | PO Box 110601 |
| Address 2: | |
| City: | Juneau |
| State: | Alaska |
| Zip: | 99811 |
| Phone: | (907) 465-5830 Ext: ☐ TTY |
| Fax: | (907) 465-1170 |
| E-mail: | jon.sherwood@alaska.gov |

## Attachments

### Attachment #1: Transition Plan

Check the box next to any of the following changes from the current approved waiver. Check all boxes that apply.

- ☐ Replacing an approved waiver with this waiver.
- ☐ Combining waivers.
- ☐ Splitting one waiver into two waivers.
- ☐ Eliminating a service.
- ☐ Adding or decreasing an individual cost limit pertaining to eligibility.
- ☑ Adding or decreasing limits to a service or a set of services, as specified in Appendix C.
- ☐ Reducing the unduplicated count of participants (Factor C).
- ☐ Adding new, or decreasing, a limitation on the number of participants served at any point in time.
- ☑ Making any changes that could result in some participants losing eligibility or being transferred to another waiver under 1915(c) or another Medicaid authority.
- ☐ Making any changes that could result in reduced services to participants.

Specify the transition plan for the waiver:

Adding limits to a service: This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year. The limit is not unduly conservative, and is annualized in order to allow for seasonal fluctuation in usage. The State received and considered all public comment on the regulations proposing the limit on day habilitation, and consequently increased the limit that was initially proposed. The cap is "soft" in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, or who have health and safety requirements affected by the limit, if justified in a plan of care or amendment. The transition to a cap on day habilitation will be done at a participant's annual plan of care renewal, which will include a renewed emphasis on natural supports and other programs and services identified through the person-centered planning process.

Making any changes that could result in some participants being transferred to another Medicaid authority: Waiver recipients who receive only a Personal Emergency Response System (PERS) through the Specialized Medical Equipment service and care coordination will be offered the option of enrolling in the State's 1915 (k) Community First Choice (CFC) program. The terms and conditions of the PERS will remain the same under CFC; ongoing service provided by a care

EXHIBIT 5

Page 1 of 1

| From: | Etheridge, Deb J (HSS) |
|---|---|
| To: | Smith, Elizabeth J (LAW) |
| Cc: | Whittaker, Jetta L (HSS) |
| Subject: | FW: AK's 0260,0261,0262,0263 waiver amendments |
| Date: | Friday, March 30, 2018 11:20:59 AM |

**From:** Abarabar, Shante L. (CMS/CMCHO) [mailto:Shante.Abarabar@cms.hhs.gov]
**Sent:** Friday, March 09, 2018 12:41 PM
**To:** Etheridge, Deb J (HSS)
**Cc:** Whittaker, Jetta L (HSS)
**Subject:** Re: AK's 0260,0261,0262,0263 waiver amendments

Thanks guys!!!

On: 09 March 2018 13:40,
"Etheridge, Deb J (HSS)" <deb.etheridge@alaska.gov> wrote:

The State amended the following waivers to comport with regulatory language:

· AK.0260.R05.02 (People with Intellectual and Developmental Disabilities)
· AK.0262.R05.02 (Adults with Physical and Developmental Disabilities)
· AK.0263.R05.02 (Children with Complex Medical Conditions)

The State amended "or" to "and" in the following sections:
   1) narrative for Day Hab in the Transition Plan located in Main, A. Attachment #1
   2) narrative for Day Hab service limits

*Deb Etheridge, Deputy Director*
*Senior and Disabilities Services*
*State of Alaska*
*907-465-5481*

**From:** Abarabar, Shante L. (CMS/CMCHO) [mailto:Shante.Abarabar@cms.hhs.gov]
**Sent:** Friday, March 09, 2018 11:35 AM
**To:** Etheridge, Deb J (HSS)
**Cc:** Whittaker, Jetta L (HSS)
**Subject:** RE: AK's 0260,0261,0262,0263 waiver amendments

Appreciate the additional catch and I'll let my CO partner know we can do a final look and move these on to management for approval.

EXHIBIT __6__
Page __1__ of __2__

Again thank you and hopefully the next time I email you regarding the amendments It's to send you the approval letter!!!

-Shante

From: Etheridge, Deb J (HSS) [mailto:deb.etheridge@alaska.gov]
Sent: Friday, March 9, 2018 12:30 PM
To: Abarabar, Shante L. (CMS/CMCHO) <Shante.Abarabar@cms.hhs.gov>
Cc: Whittaker, Jetta L (HSS) <jetta.whittaker@alaska.gov>
Subject: AK's 0260,0261,0262,0263 waiver amendments

Hello, Shante.

Alaska has amended the following waivers in response to CMS call on 03/08/2018:

· AK.0260.R05.02 (People with Intellectual and Developmental Disabilities)
· AK.0261.R05.02 (Alaskans Living Independently)
· AK.0262.R05.02 (Adults with Physical and Developmental Disabilities)
· AK.0263.R05.02 (Children with Complex Medical Conditions)

Note: when reviewing Appendix C-1 the State realized that the applicable box, "As a waiver service defined in Appendix C-3", was not check. The waiver service of care coordination for monthly monitoring is furnished as a distinct activity to waiver participants. We made the correction and checked the box in C-1.

*Deb Etheridge, Deputy Director*
*Senior and Disabilities Services*
*State of Alaska*
*907-465-5481*

# Notice of Amendments to Medicaid Waivers and Proposed New Medicaid Waiver

PUBLIC NOTICE – REQUEST FOR COMMENTS

The Department of Health and Social Services, Division of Senior & Disabilities Services (SDS) is requesting comment from recipients, waiver service providers, and other stakeholders on amendments to Alaska's four home and community based services waivers and on a new waiver application before these items are submitted to the Centers for Medicare and Medicaid Services (CMS).

The proposed amendments align the waivers with new long term services and supports programs initiated by SDS.  The proposed Community First Choice (CFC, also known as 1915(k) program and the Long Term Services and Supports Targeted Case Management (LTSS TCM) State Plan Option will be submitted to CMS for approval at the same time as the new waiver and waiver amendments are submitted, so that all changes have the same effective date.

The amendments propose to:

• Remove Personal Emergency Response Systems (PERS) from the service definition of Specialized Medical Equipment, as PERS is allowable under CFC.  (All waivers)

• Remove the initial waiver application and development of a participant's annual support plan from the service definition and rate chart for care coordination, as these tasks will be provided as LTSS TCM.  (All waivers)

• Align the service limit for day habilitation with adopted regulations. (All but the Alaskans Living Independently waiver)

• Add reserved capacity slots and clarify the process for selection of entrants to the Intellectual and Developmental Disabilities (IDD) waiver.

• Make technical corrections to several quality improvement measures. (All waivers)

The proposed Individualized Supports Waiver (ISW) includes these features:

• Many of the same services and providers available on the IDD waiver

• An individual cost limit of $17,500 per year

• A limit of 600 participants on the waiver at any one time, selected from the Developmental Disabilities Registration and Review (DDRR) ISW waiting list

The approved waivers and the proposed amendments, as well as the proposed ISW, can be viewed at http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx.    Copies of the proposed amendments and ISW will also be available for viewing at SDS offices in Anchorage (550 W. 8th Ave.), Juneau (240 Main St., Suite 601) and Fairbanks (400 Gambell St., Suite 303).

SDS will accept public comment on these amendments until 5:00 pm November 27, 2017. Please send written comments to Jetta Whittaker, PO Box 110680, Juneau AK 99811, or jetta.whittaker@alaska.gov.

Attachments, History, Details

EXHIBIT __7__

**Attachments**
None

**Revision History**
Created 10/20/2017 4:07:13 PM by jlwhittaker
Modified 10/24/2017 11:10:50 AM by jlwhittaker

**Details**

| | |
|---|---|
| Department: | Health and Social Services |
| Category: | Public Notices |
| Sub-Category: | |
| Location(s): | Statewide |
| Project/Regulation #: | |

| | |
|---|---|
| Publish Date: | 10/24/2017 |
| Archive Date: | 11/27/2017 |

Events/Deadlines:

EXHIBIT ___7___

# AADD MEETING
## FACE TO FACE MEETING
### JUNEAU, ALASKA
### FEBRUARY 28, 2018

Meeting called to order at 8:30am by Executive Director Lizette Stiehr.

STRATEGIC PLAN – MICHAEL BAILEY
> ➢ SB174, sponsored by Senator Micciche, puts our shared vision into statue. Scheduled to be heard tomorrow on the Senate floor.
> ➢ 2016 – 2018 three primary Goals: 1) Advocacy and communication strategy to sustain system, 2) ongoing workforce crisis, sustain, and 3) Increase AADD sustainability.
> ➢ AADD Board met in January and identified critical issues for 2018 priorities. The current strategic plan with FY18 goals was viewed and is posted on our website.
> ➢ And thank you for active membership. Understanding times are tough, travel budgets tight, and it is important to be here.

MENTAL HEALTH TRUST UPDATE – KELDA BARSTAD, JIMAEL JOHNSON
> ➢ Jimael Johnson, Trust Program Officer is focused on employment and child services. Kelda Barstad is forced on housing and long term supports and services.
> ➢ Trust grant funds four primary goals for AADD:
>> 1) Advocacy for best practices through national presence. S Garner, on ANCOR's Representatives Board will attend ANCOR and represent Alaska. K Champney and A Faulkner with L Stiehr will present at ANCOR conference in New Orleans.
>> 2) Change management goal, supporting leadership development in provider organizations is offered through Be the Change event ins Anchorage, May 16 – 18 with Rockwood Institute.
>> 3) Agency sustainability is a growing concern with the rapid and profound systems changes. Contract supports for tool kit to assist organizations to weather the changes is being developed.
>> 4) Workforce development to support passionate and compassionate DSP's.
> ➢ Trust housing and long-term supports include funding for special needs housing grants for community organizations, housing and homeless coordinators in Anchorage and Fairbanks and coordination of homeless services and creation more affordable housing. Long-term services and supports is assisting with person centered care coordination and STAR coordinator support. Assisting SDS to participate in NCI (national core indicator) project with implementation in in Alaska.
> ➢ Trust also supporting Challenge Alaska to purchase their facility in Alyeska for long term recreational support. Supporting children with autism in Anchorage and promoting employment first model through work with several departments including Department of labor,
> ➢ Trust continues to offer mini-grants to Trust beneficiaries with IDD, behavioral health and Alzheimer's and dementia.

GOVERNOR'S COUNCIL – PATRICK REINHART, KRISTIN VANDAGRIFF, ANNE APPLEGATE, MAGGIE WINSTON
> ➢ Employment First update – Job Fair in Anchorage March 30th for the fourth year. A collaboration of DHSS and Labor targeting veterans and folks with disabilities. Alaska is the third state to eliminate sub minimum wage.
> ➢ Supported Decision Making will be a keynote by Anne Applegate at Full Lives. Annual report and state five year plan completed
> ➢ Transition handbook in second printing let Kristin or Ric Nelson if you want additional copies.

EXHIBIT 8

Page 1 of 6

- ➢ DD Vision inspired potential presentation for National Association on Councils on Disabilities (similar to ANCOR).
- ➢ The Department has released final regulations related to the bill on re-cycling durable medical equipment status.
- ➢ Supported Decision Making agreements and changes to state law are outlined in HB336, sponsored by Millet. It will be heard Thursday at 3:30pm.
- ➢ Anne Applegate is working with a number of provider organizations to train staff on Supported Decision Making. She is offering trainings for all agencies and care coordinators in multiple regions/ hubs: Dillingham, Kenai, Matsu, Fairbanks and Juneau regions. Michelle Girault comments that the training is fun and engaging.

DD VALUED SHARED VISION – KIM CHAMPNEY

Kim did a historical review of the Shared Vision and the five working groups.
Priorities to the workgroup on Workforce was the focus of the small group work. They were:

1. Coordinated Recruitment
2. Training
3. Ready to work

Takeaways from the small groups included:
- ➢ Look at certification (like nursing) with required continued education
- ➢ Develop a centralized app (like Anchorage School district) with openings and requirements so application for differing agencies is consistent could be sent to multiple agencies
- ➢ Suggested DSP code of ethics be adopted and also AADD code of ethics
- ➢ Support and robust training and collaborate more and recruit earlier (high school)
- ➢ Universal recruitment
- ➢ Awareness and acknowledge need for consistent training – a registry for ready to work. Perhaps could be part of Alaska Training Cooperative curriculum.
- ➢ Need for behavior training
- ➢ Having good training and support for supervisors
- ➢ Priorities different between rural and urban

LUNCH (thank you REACH)

STATE OF ALASKA UPDATE – JON SHERWOOD, MARGARET BRODIE, DUANE MAYES, MAUREEN HARWOOD, LYNNE KEILMAN-CRUZ, CRAIG BAXTER, DONNA STEWART

Jon Sherwood, Deputy Commissioner, Department of Health and Social Services
- ➢ Alaska's Medicaid needs a supplemental of 93 million dollars to meet obligations for FY18. Only 4% of that for Medicaid expansion as the federal CHIP (Child Health Insurance Program) was reauthorization. The increase is a combination of caseload growth and expected savings not realized from Medicaid Reform. Case load growth is not primarily from individuals in the aged or disabled groups, but adults and children. The Department has requested 41 additional positions in DPA (Division of Public Assistance) to address the backlog of Medicaid eligibilities and reauthorizations. DPA has moved back to a caseload system where those eligible for long-term services stay with the same eligibility worker. The Department is working with state ombudsman to address complaints about DPA and especially long-term care.

Margaret Brodie, Division Director, Health Care Services

- ➢ Conduent (aka Xerox) is under 17 action plans. Providers will see reduced wait time for calls. It is imperative that questions get answers and hold times are reduced. Conduent has restructured and is trying to do a better job, some things are better. They've made progress.

2

EXHIBIT 8

- Harmony is now working with MMIS systems. Alaska signed an agreement for a provider reporting module system out of West Virginia for provider reporting module system taking that piece away from Conduent. An electronic portal for Medicaid revalidation is being obtained allowing for live portal entry and information. Pharmacy module is going to Magellan. Surveillance review process moves from Conduent effective June and Truben data analytics (strong company) and will be dealing with new folks for care management. New system will produce provider data analytics in a few days which now takes two or three weeks.
- Medicaid reform from SB74 has three reforms still in play, 1) managed care, 2) provider base reform and 3) bundled payments. Two are completely ready to go but HCS must award all three at once or none at all.
- Geneva Woods sold their pharmacy and a portion of their DME (durable medical equipment) business. They continue to provide some services.
- Tribal claiming for waivers is being rolled out and can have big savings. There is no change in what providers do. Health Care Services staff move coding to 100% federal funding within the system. Providers must have a care coordination agreement with the tribal entity in order for CMS to recognize the tribal claiming.
- Enterprise system is ready for new ISW waiver services.
- If supplemental for Medicaid isn't passed the Division is unsure what they will do when funds run out at the end of March. They recognize some providers on 100% Medicaid funded. Those services that are 100% federal can be reimbursed regardless of supplemental approval.

Duane Mayes, Division Director, Senior and Disability Services, Maureen Harwood, Lynne Keilman-Cruz, Lisa Morley (grant oversight) and Thea Howard (reviewer in IDD unit).
- EVV (Electronic Verification of Visits) is a federal requirement that verifies time and location of services when in home. It was passed as the Cures Act in federal congress in 2016 with an implementation date of January 2019. If states don't comply (or make substantial progress) there is a small reduction in the FMAP (federal matching funds). The reduction would cost Alaska approximately 1 million dollars to be out of compliance. SDS had contracted with Allison Lee who is developing a recommendation from the Association of Personal Care Services with an open vendor model. SDS is planning outreach to 15 communities between April and June to educate communities and seek input from stakeholders about the law's implications. Funding for implementation will be an issue and SDS is well aware of provider funding issues. Communication will continue through boards AADD, ACoA, Governor's Council and AgeNet. SDS plans to request a one year extension.
- Harmony is software that has been customized for SDS for automated plans of care. The Harmony system went live within SDS in January. Phase one incorporated adult protective services. They are now in phase two with plans (but no hard date –hopefully March) to allow care coordinators to enter data. Challenges included duplications within the system that are being cleared up. Other provider types (organizations) will not be in this phase..
  Question: Are you going to adjust the number of characters allowed in each section and when will it roll out for care coordination? Lynne – Anticipate participation of care coordinators in mid-March. Harmony now allows the number of characters as needed. Five attachments can be added to each note and care coordinators can add multiple notes.
- ISW 1915C (Individualized Supports Waiver). SDS is hopeful that ISW implementation will take place by May 2018. Anticipate some plan of care authorizations by June 1. Maximum annual amount cannot exceed $17,500. This does not include care coordination costs. Justification needs to be the same as IDD waivers.
  Has CMS approved ISW? Not yet. The waiver amendment supporting ISW has been submitted to CMS (Center for Medicaid Services). They have requested additional information, but the talks are fairly informal around language issues. SDS don't anticipate any problems in getting approval.
- Grant Funds: 1.4 million dollars were moved from Medicaid (designated to match ISW costs in FY18) back to general funds. This allowed disbursement of the $1.4 million back to grantees.

3

EXHIBIT  8

Additionally 450K has been set aside for those on grants who don't qualify for Medicaid waiver services/ISW waiver.

- ➢ Transition Services SDS is committed to adding transition services to waiver services to support transition of individuals from institutions (either API or outside of Alaska) back into the community. A small group of providers has been charged with identifying the services needed and sharing that information to SDS. API costs $1,214/day. Transition will include children. There is a clear need for those transitioning back into the community to have support when behaviors escalate to assure they don't return to institutions. Yes per Duane, flexible funds.
- ➢ ROUGH waiver costs (not "scrubbed") between 2016 and 2017 show the following increases
  Care Coordination   8.3% increase          Residential habilitation 3.25% increase
- ➢ Day Habilitation update – Hours of day habilitation reduced to an average of 12/hour/week. Since 2/22/18 a total of 842 Plans of Care have been approved. 13% or 116 of the POC asked for an exemption from the regulatory cap. Five of those requests were approved. There have been 17 requests for fair hearings, with 3 upheld, 2 agreements and one dismissed. Others either haven't taken place (8) yet or have become legal cases (3)
- ➢ Continuum of care power point, presented to legislature by SDS lays out the history of the waiver program with cost savings for community services vs institutional care/ICFIDD/nursing homes. Power point is posted on AADD website.
- ➢ Parents can pay for services privately, using sliding scale or charge full amount for day hab,
- ➢ Technology – table for next call in April.   A pilot project is moving forward.
- ➢ Companion services are an area of great interest for SDS but are not currently available. It was strongly suggested that services include both individual and group companion services,

Donna Steward, Executive Director, ORR (Office of Rate Review)
- ➢ ORR rebasing rates, not sure when the office will be able to adjust rates due to budget constraints. But they plan to be ready when they can move forward. They have most of the information they need for their rate methodology but still need information on four codes: ADC, meals on wheels, congregate meals or transportation. If you offer these services, ORR would be more than happy to offer you technical assistance, even coming on site, to assist in completing the cost information.

TOM CHARD – EXECUTIVE DIRECTOR OF ABHA (ALASKA BEHAVIORAL HEALTH ASSOCIATION)
Tom appreciated the invitation to speak with AADD and sees three opportunities for collaboration:
1. Transition support services for those with dual diagnosis to partner with AADD and behavioral Health providers
2. Focus on autism services desperately needed by Alaskans with new regulations close to promulgation providing an opportunity to bring DD and BH provides together
3. Workforce crisis for DSPs and midlevel practioners, both have workers who are undervalued and change in systems.
Governor's Council on Disabilities invited Behavioral Health to join their Autism Work Group. Next meeting is April 17, 12-4 in AARP conference room.

KEY COALITION UPDATE – DAVE PARISH, KEY LOBBYIST
- ➢ Introduced S Henrick, new associate
- ➢ Legislative Priorities:
  1) SB174 DD Shared Vision legislation represents what Key Coalition stands for and senators appreciate that Key Coalition has come forward with hands up and not hands out past several years.
  2) Stable long-term fiscal plan – sources of funding for the budget are limited this year and must use PFD to sustain budget. Projections show there's enough PDF percent of market value that they use funds to get by and pay dividend for rest of our lives, but no significant opportunity for growth or projects.
  3) Reactivate commitment to waitlist
  4) Support SB80 deaf, hard of hearing and speech impaired
  5) HB366 Supported Decision Making

4

EXHIBIT 8

- Need to educate legislature about waivers and alternatives. Institutional level of care and the closure of Harborview committed the state to community services. That is unfamiliar history to 80% of legislators.
- The Governor's has directed the department to look and find cost reductions, particularly with Medicaid as the largest budget component with significant growth. Big cost of health care conversation going on between the legislature and the Department. The Department is moving away from the fee of service model of health care with SB74 (Medicaid Reform). The need for a 93 million supplemental to support Medicaid is a result of taking a leap of faith regarding cost savings and cost efficiencies from Medicaid reform that have not yet materialized.
- In order to support the need for supplemental Medicaid funding approval Dave Parrish suggests sharing information with members of house and senate finance committees.
- Strategy to have gallery full of supporters for SB74 vote at 10:30 am or 11:00am.

AADD INTERNAL BUSINESS

- Please complete evaluation forms
- BE THE CHANGE: Training opportunity May 16-18, 2018. This is follow up to the Leadership Consortium. There are a few remaining seats available. Contact Kim Champney at kim@champneyconsulting.com or Lisa Cauble at lisa@alaskachd.org. This is your chance to rejuvenate and get inspired while building a stronger network of support. Rockwood Institute, and Leading Edge Consulting and Champney Consulting will be leading the group. Only 25 participants will be accepted. Applications are due by March 27, 2018.

Debrief Issue of the Day - Michael Bailey
1) Supplemental approval request: AADD will craft letter to legislative leaders. This is of great urgency. Letter will go to committees Monday, March 5th.

2) EVV (Electronic Verification of Visits)
Suggested that AADD send a letter to the Senator Murkowski's office supporting a delay in implementation. Allison says EVV is a heavy lift for every state. What is ANCOR doing? Coordinating with NASUAD's efforts to work with the administration to delay implementation?

3) ISW – Individualized Supports Waiver
Talk with Lisa Morley (if you haven't already) to obtain list of grant folks who have been drawn for the ISW waiver. Families have not always processed their receipt of letters notifying them of their eligibility for ISW. Care Coordinators expressed concern about work load. Particularly with fair hearings taking 80 to 100 hours requiring their presence and they don't get paid if plan is not approved or denied. Concern expressed about responsibilities of care coordination keep increasing and SDS wants to decrease reimbursement rates and family contact. With the $17,500 limit on ISW waivers the services will likely be respite care with some day habilitation.

4) Companion Services
Great need for companion services with reduction of day habilitation. It is a companionship service versus habilitative.

5) Day Habilitation
Questions raised about what criteria was used resulting in approval of 5 of the 115 requests for exemptions to the 12/week cap on day hab. Discussed Disability Law Center services to assist families in fair hearing. Alaska legal services if also a good support.

6) PCA issues: look at numbers we want to be presenting. What are unintended consequences of further cuts to PCA services? Let legislators know that folks are getting hurt and reduction in people getting PCA services has resulted in an increase in nursing home placements. The cost of nursing care

EXHIBIT 8

is increasing while PCA remains about the same. Are group home services increasing with reductions in supported living authorized?

Key Coalition
> Total 10 to 15 people at capitol tomorrow morning for SB174 passage in the Senate
> Please come to Centennial Hall at 8:30 Thursday morning to help decorate. Lt Governor Mallot and Commissioner Davison coming to Unity dinner. Orientation is truncated this year to allow time for Governor's meeting with Lt Governor Mallot Thursday afternoon 3:30pm.
> Primary responsibility for each Key Campaigner is talk with legislators.

Adjourned 4:35pm
respectfully submitted by njm/les

that a particular legally liable third party insurer does not pay for the service(s), the provider may not generate further bills for that insurer for that annual period.

G. **Fair Hearing:** The State provides the opportunity to request a Fair Hearing under 42 CFR §431 Subpart E, to individuals: (a) who are not given the choice of home and community-based waiver services as an alternative to institutional level of care specified for this waiver; (b) who are denied the service(s) of their choice or the provider(s) of their choice; or (c) whose services are denied, suspended, reduced or terminated. **Appendix F** specifies the State's procedures to provide individuals the opportunity to request a Fair Hearing, including providing notice of action as required in 42 CFR §431.210.

H. **Quality Improvement.** The State operates a formal, comprehensive system to ensure that the waiver meets the assurances and other requirements contained in this application. Through an ongoing process of discovery, remediation and improvement, the State assures the health and welfare of participants by monitoring: (a) level of care determinations; (b) individual plans and services delivery; (c) provider qualifications; (d) participant health and welfare; (e) financial oversight and (f) administrative oversight of the waiver. The State further assures that all problems identified through its discovery processes are addressed in an appropriate and timely manner, consistent with the severity and nature of the problem. During the period that the waiver is in effect, the State will implement the Quality Improvement Strategy specified in **Appendix H.**

I. **Public Input.** Describe how the State secures public input into the development of the waiver:
In general, the State secures public input on operational implementation of its waivers and amendments through a variety of methods, including:
• Information-sharing teleconferences and webinars with care coordinators and other waiver services providers;
• Regular communication with the State of Alaska's statutorily-mandated advocacy board, the Governor's Council on Disabilities and Special Education, and related advocacy coalitions that comprise the agencies serving recipient populations, the Key Coalition and the Alaska Association of Developmental Disabilities, both for people with developmental disabilities.
• Solicitations for interactive presentations to the Alaska Native Health Care Consortium (ANTHC) Long Term Care Committee.

Amendments to Alaska's existing four waivers contain changes necessary due to planned implementation of Community First Choice and Long Term Services and Supports Targeted Case Management state plan amendments, along with presentation of a fifth proposed waiver. Accordingly, The State posted notice of new regulations, amendments to the four existing waivers and the new proposed waiver on October 24, 2017 and issued invitations for tribal consultation on all waivers on October 23, 2017.

The State conducted waiver outreach via letters and emails to all tribal organizations, advertisements in the state's largest newspaper on October 24, 2017, Online Public Notice (http://notice.alaska.gov/187510 ) on October 24, 2017, and an E-Alert (http://list.state.ak.us/pipermail/sds-e-news/2017-October/002308.html) sent to 1700+ subscribers on the Division of Senior and Disabilities (SDS) email list-serve on October 25, 2017. The E-Alert was then circulated to specific membership list-serves by each advocacy group.

The State also made copies of the proposed amendments to the four existing waivers available to the public at all three SDS offices on October, 24, 2017, and posted the proposed waiver amendments (http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx) to the SDS website on October 24, 2017.

Prior to the public comment period beginning, the State conducted outreach (http://list.state.ak.us/pipermail/sds-e-news/2017-August/002288.htm) on August 25, 2017, to announce the upcoming waiver amendments and the Individualized Supports Waiver and (http://list.state.ak.us/pipermail/sds-e-news/2017-August/002290.html) on August 30, 2017, to announce the upcoming webinars, held on September 6 and 8, 2017. The invitation to a public forum (http://list.state.ak.us/pipermail/sds-e-news/2017-September/002297.html) was issued on September 22, 2017, and (http://list.state.ak.us/pipermail/sds-e-news/2017-October/002298.html) on October 3, 2017. The purpose of the public forum was to explain the various components of the proposed new waiver, the waiver amendments, and the accompanying regulations. The public forum was held on October 4,, 2017.

These public forums served as a basis for a "Frequently Asked Questions" (http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx), document that was posted on the SDS website on November 15, 2017.

The proposed amendments to Alaska's four approved waivers generated no public comment.

EXHIBIT _9_

Page _I_ of _I_

| | |
|---|---|
| **From:** | Etheridge, Deb J (HSS) |
| **To:** | Abarabar, Shante L. (CMS/CMCHO); Whittaker, Jetta L (HSS); Murray, Jenny A (HSS) |
| **Cc:** | Shannahan, Ryan I. (CMS/CMCS); Poisal, Kathryn J. (CMS/CMCS); Kavala, Dianne E.(CMS/CMCS) |
| **Subject:** | RE: AK"s 0260,0261,0262,0263 waiver amendments follow-up questions and comments (Informal RAI) |
| **Date:** | Friday, March 02, 2018 2:57:36 PM |

Hello, Shante.

See attached State response to CMS Informal RAI for the following waiver amendments:

· AK.0260.R05.02 (People with Intellectual and Developmental Disabilities)
· AK.0261.R05.02 (Alaskans Living Independently)
· AK.0262.R05.02 (Adults with Physical and Developmental Disabilities)
· AK.0263.R05.02 (Children with Complex Medical Conditions)

*Deb Etheridge, Deputy Director*
*Senior and Disabilities Services*
*State of Alaska*
*907-465-5481*

---

**From:** Abarabar, Shante L. (CMS/CMCHO) [mailto:Shante.Abarabar@cms.hhs.gov]
**Sent:** Wednesday, January 31, 2018 2:47 PM
**To:** Etheridge, Deb J (HSS); Whittaker, Jetta L (HSS); Murray, Jenny A (HSS)
**Cc:** Shannahan, Ryan I. (CMS/CMCS); Poisal, Kathryn J. (CMS/CMCS); Kavala, Dianne E.(CMS/CMCS)
**Subject:** AK's 0260,0261,0262,0263 waiver amendments follow-up questions and comments (Informal RAI)

Hello Deb, Jetta, and Jenny.

The CMS (CO & RO components) are reviewing the state's 1915(c) waiver amendment submittal(s):

· AK.0260.R05.02 (People with Intellectual and Developmental Disabilities)
· AK.0261.R05.02 (Alaskans Living Independently)
· AK.0262.R05.02 (Adults with Physical and Developmental Disabilities)
· AK.0263.R05.02 (Children with Complex Medical Conditions)

As part of this review, please see the attached follow-up questions and comments (Informal RAI) that the state should address in writing (response sent to CMSSPA_Waivers_Seattle_R10@cms.hhs.gov and updated (where applicable) in WMS – no later than **February 23, 2018**).

The waiver amendments are released to the state in WMS so Alaska staff can make the necessary changes to the waiver application.

Please contact me immediately if the state is unable to meet the above deadline and if you have any questions or would like to set up a call to discuss the follow-up questions, please feel free to

EXHIBIT 10

Page 1 of 6

contact me at 206-615-2346 or Shante.Abarabar@cms.hhs.gov.

Thank you
-Shante Abarabar

EXHIBIT 10
Page 2 of 6

**All Waivers**

1. **Public input:** Please indicate the date(s) materials were published and made available for public comment.

*Response: The State posted notice of new regulations, amendments to the four existing waivers and the new proposed waiver on October 24, 2017 and issued invitations for tribal consultation on all waivers on October 23, 2017.*

*The State conducted waiver outreach via letters and emails to all tribal organizations, advertisements in the state's largest newspaper on October 24, 2017, Online Public Notice (http://notice.alaska.gov/187510 ) on October 24, 2017, and an E-Alert (http://list.state.ak.us/pipermail/sds-e-news/2017-October/002308.html) sent to 1700+ subscribers on the Division of Senior and Disabilities (SDS) email list-serve on October 25, 2017. The E-Alert was then circulated to specific membership list-serves by each advocacy group.*

*The State also made copies of the proposed amendments to the four existing waivers available to the public at all three SDS offices on October, 24, 2017, and posted the proposed waiver amendments (http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx) to the SDS website on October 24, 2017.*

*Prior to the public comment period beginning, the State conducted outreach (http://list.state.ak.us/pipermail/sds-e-news/2017-August/002288.htm) on August 25, 2017, to announce the upcoming waiver amendments and the Individualized Supports Waiver and (http://list.state.ak.us/pipermail/sds-e-news/2017-August/002290.html) on August 30, 2017, to announce the upcoming webinars, held on September 6 and 8, 2017. The invitation to a public forum (http://list.state.ak.us/pipermail/sds-e-news/2017-September/002297.html) was issued on September 22, 2017, and (http://list.state.ak.us/pipermail/sds-e-news/2017-October/002298.html) on October 3, 2017. The purpose of the public forum was to explain the various components of the proposed new waiver, the waiver amendments, and the accompanying regulations. The public forum was held on October 4, 2017.*

*These public forums served as a basis for a "Frequently Asked Questions" (http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx) document that was posted on the SDS website on November 15, 2017.*

*This information has been entered into each waiver amendment.*



NON-RESPONSIVE

EXHIBIT 10

NON-RESPONSIVE

Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/22/18   Page 49 of 66

EXHIBIT  10

Exhibit 1, Page 49 of 66



NON-RESPONSIVE

4. **Appendix C, Day Habilitation** – Service Limits (not applicable for AK.0261):

    a. How was the 624 hour cap calculated and what steps will the state take to ensure that the individual's needs can be met within the limit?

    b. Is the state currently serving any participants with needs that exceed the limit?

    c. What criteria will the state use to determine whether a request to exceed the limit is sufficiently justified in the plan of care?

    d. How will the state meet the needs of any participant (current or new) that need more than the new proposed limit?

    e. Please remove: "The transition to the cap....person-centered planning process," as this should be described in the Purpose of Amendment section and does not need to be detailed in the service definition.

*Response:*

    *a.    The State originally proposed a "soft cap" of eight hours of day habilitation per week in regulations put forth for public comment. The proposed cap of eight hours was based on review and analysis of habilitation goals contained in support plans for people on the IDD waiver. In response to public comment, the cap amount was annualized, which allows for seasonal variation in utilization of day habilitation. Public testimony made to legislators resulted in an increase in funding for up to 12 hours per week (or 624 hours per year). Analysis of claims payment data indicated that the vast majority of day habilitation recipients received less than 12 hours per week of day habilitation, meaning that the soft cap is unlikely to affect most recipients.*

    *The cap on day habilitation is being implemented at the time of support plan renewal, as reviewers closely analyze the goals identified when*

requesting day habilitation. The State has seen a slight increase in requests for additional hours of Supported Living and In Home Supports (both are types of residential habilitation) since the implementation of the day habilitation cap.

b. The State has approved several support plans that documented the need to receive day habilitation in excess of the cap. The State also has several requests for Fair Hearings on day habilitation reductions.

c. Requests for service amounts exceeding the yearly cap are reviewed by SDS to determine whether a limited amount of additional day habilitation hours are necessary to protect a participant's health and safety, and to prevent institutionalization as regulated under 7 AAC.130.260(c).

d. Day habilitation service requests are evaluated in context of the participant's identified goals, overall level of waiver services, and other supports and services available to the individual.

e. The sentence identified in e. above will be added to the Purpose of Amendment section and removed from the service definition for day habilitation in Appendix C-1 of each proposed waiver amendment.



# GOVERNOR'S COUNCIL ON DISABILITIES AND SPECIAL EDUCATION

## Developmental Disabilities Committee Meeting Minutes

RECEIVED

JUN 0 5 2018

/ General's Office
Juneau

## LOCATION
## Governor's Council Conference Room
## 3601 C Street
## Anchorage, Alaska
## Teleconference

### Meeting Date
### April 4, 2018
### 1:00 p.m.

**Attendees:**
Corey Gilmore
Art Delaune
Dave Fleurant
Mallory Hamilton
Maureen Harwood
Lizette Stiehr
Caitlin Rogers
Kim Champney
Jeanne Gerhardt-Cyrus
Heidi Kelly
Anthony Cravalho
P.J. Hatfield-Bauer

**Guests:**
Duane Mayes

**Staff:**
Anne Applegate
Lanny Mommsen

Prepared by: Sheila Garrant, Peninsula Reporting

EXHIBIT 11
Page 1 of 10

**Call to Order – 1:00 p.m.**
**Roll Call**

## WELCOME FROM THE CHAIR

Corey Gilmore welcomed the committee members to the meeting.

## INTRODUCTIONS, ANNOUNCEMENTS, AND GOOD NEWS

No introductions, announcements, or good news were reported.

## CORRESPONDENCE

No correspondence was reported.

## CONFLICT OF INTEREST DECLARATIONS

No conflicts of interest were declared.

## APPROVAL OF THE AGENDA

Mallory Hamilton **MOVED** to approve the agenda, **SECONDED** by Lizette Stiehr. Hearing no objections, the motion **PASSED.**

## APPROVAL OF THE MINUTES FROM THE PREVIOUS MEETING

Mallory Hamilton **MOVED** to approve the minutes from the March 2018 meeting as written, **SECONDED** by Lizette Stiehr. Hearing no objections, the motion **PASSED.**

## REPORTS
**DD Collaborative Update**

Kim Champney reported that she is in Wasilla this week co-facilitating the focus group meeting with Roy Scheller, the chair of the DD Vision project. They held focus group meetings in Kodiak on Monday and Kenai on Tuesday. She stated that the meetings have had good attendance. At the meetings, they are hearing the importance of parents understanding the vision and person-directed services. She noted that there have been very

good discussions about how to create true inclusion, and they are hearing that a common barrier in the support chain is transportation, particularly in rural/remote regions. She stated that Kristin Vandagriff sent the committee members a link to an online survey, and she encouraged committee members to fill it out.

Kim Champney reported that she and Lizette Stiehr are working on a community awareness group related to the DD Vision. One of the projects they identified was creating a welcoming video for people and families new to services that talks about the vision and person-directed supports and self-advocacy. This would be the introductory video hub with different resource spokes linked to it such as waiver training, supported decision making, and other community resources to support an individual.

Kim Champney shared that with regards to community awareness, there is a national annual disability pride event that's tied to the ADA signing. She reported that the DD Vision Project is planning a disability pride event for Alaska for July 21st. They will be reaching out to partners across all disability areas to come together and support the event.

**Chair Report**

Corey Gilmore shared that the new equipment the Council approved for him came in, and he is pleased to be able to be clearly heard and hear the teleconferenced meetings.

Jeanne Gerhardt-Cyrus shared that the annual youth conference in the Kotzebue region starts April 5th.

**I/DD Unit**

Duane Mayes joined the meeting to give an update on the following topic areas:

*EVV*

Duane Mayes reported that there has been a push nationwide to get CMS to extend going live with the system by two years. If CMS chooses not to do that, they will allow states to put in a good faith letter extension request.

EXHIBIT \_\_



Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/18/18   Page 54 of 66
Exhibit \_\_ Page 3 of \_\_

Duane noted that he wrote an e-mail to CMS officials detailing the state of the State for implementing EVV in Alaska, which will be useful should they need to submit an extension request.

Duane Mayes reported that they plan to hold community forums statewide throughout the next four months for a total of 15 forums in order to gather feedback on the concerns with the rollout of EVV. He noted that they also reached out to Senator Murkowski and Congressman Young regarding their concerns with EVV.

## *The State of Day Habilitation*

Duane Mayes began by stating that 85 percent of the plans of care that have come in since October 1st (over 900 submitted) have requests below 12 hours. He gave a brief history reminding everyone that this was a collective effort involving a large number of stakeholders to identify efficiencies and reductions given the reductions imposed by the legislature. One of the recommendations was reductions to day habilitation, and after an analysis it was concluded that approximately 11 hours a week was the average.

Duane Mayes stated that 15 percent of the plans submitted since October 1st have come in with requests for approximately 7.5 hours above the soft cap, for a total of just under 20 hours. There were a few outliers with requests for 40, 45, to 50 hours of day habilitation per week, which are the exception. Duane reported that there have been eight plans approved with day habilitation above the 12-hour soft cap.

Duane Mayes outlined the basic criteria they use to approve hours beyond the soft cap as follows:

- Rural/remote environment where there are absolutely no natural supports whatsoever,
- Behavioral challenges,
- Six critical incident reports in that year,
- In and out of institutions and/or currently in an institution and a plan is being developed to return to the community.

Duane Mayes described some of the plans of care submitted as having



statutory language specific to risk of institutionalization inserted as justification for exceptions to the soft cap or requesting the same level of day habilitation they were previously approved for, which is not enough to justify a request for increased hours.

Duane Mayes informed the committee that before October when they went live with the soft cap, they wrote the draft regulations. Within the draft regulatory language they had a section specific to day habilitation where they talked about health and safety and risk of institutionalization. The error in the language came with the "and" risk of institutionalization, which went to the public and "or" risk of institutionalization that went to CMS. They currently have an amendment with CMS to correct that error.

## Companion Services

Duane Mayes reported that Representative Ortiz from Ketchikan submitted an amendment referred to as legislative intent language directing the Division to move forward with implementing companion services as a way to supplement the reduction in hours to day habilitation. Duane stated that they will engage the community and reach out to other state officials regarding definitions and guidance they might offer on their companion services.

## Harmony System Transition

Duane Mayes answered questions related to the Harmony system stating that they went live with Harmony internally to ensure the system is working well before it goes live publicly. He anticipates that Harmony will be out within the next month or two.

## Individual Supports Waiver (ISW)/Community First Choice (CFC)

Duane Mayes stated that the ISW amendment has not yet been approved. He noted that they are in the request for additional information process. Duane stated that the CFC, the State Plan Amendment (SPA), and the targeted case management have been approved, and the regulations for the CFC are with the Department of Law for a final review before going to the Lieutenant Governor's office. He noted that they are still on target to go live with the ISW in May and are going live with CFC option in July.

EXHIBIT _I\_
Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/12/18   Page 56 of 66

## General Council and Executive Committee Update

Patrick Reinhart reported that the Executive Committee is involved in the Council meeting planning. The meeting is scheduled for May 15th and will be a one-day teleconference/webinar. The next Executive Committee meeting is scheduled for April 10th.

Patrick Reinhart reported that the Council office is planning to move to another office located downtown at the Atwood State Office Building sometime around the fiscal year change-over.

## Mental Health Trust Authority

A report from the Mental Health Trust Authority was not available for the meeting.

## AADD

Lizette Stiehr reported that AADD's monthly meeting is scheduled for April 12th where Duane Mayes will speak to the group about electronic visit verification, day habilitation, technology mini grants, and other imminent topics.

Lizette Stiehr reported that the next Hot Topic meeting will be focused on codes of ethics, where they will be asking their member programs to share where their organizations are with regards to ethic codes. That meeting is scheduled for April 26th at 11:00 a.m.

Lizette Stiehr reported that AADD met with Representative Don Young where they got to present a number of issues from the provider's standpoint to him including EVV, where providers are being forced by an unfunded federal act to move into electronically verifying visits. Lizette reported that AADD has written a letter to the congressional delegation recommending that the implementation be pushed back and that the definition of who it applies to be narrowed and at a minimum exclude 24-hour services.

Lizette Stiehr reported that ANCOR, the national organization representing

EXHIBIT \\

Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/13/18   Page 57 of 66   Exhibit 1, Page 66 of 66 of \O

providers put out a six-page memorandum clearly expressing to CMS how problematic the timelines are for the implementation with the new broader categories included.

Lizette Stiehr reported that SB 174, the DD Shared Vision has passed the Senate and has been through two committees in the House. Lizette shared that she will be speaking about the Shared Vision at the Stone Soup Group's Parent Conference, and Kim Champney will be speaking about the Shared Vision at the Full Lives Conference. On the national level, Kim Champney, Amanda Faulkner, and Lizette will be presenting at ANCOR in New Orleans mid-April on what the Shared Vision looks like in implementation in Amanda Faulkner's agency.

### Housing

A report from Oscar Cedano on housing was not available for the meeting.

### Stone Soup Group

Anne Applegate reported that Stone Soup Group is hosting the Parent Conference April 6th and 7th, and the Soupie Awards will be presented Saturday morning at 9 a.m. Anne noted that Stone Soup Group has a kickoff event Thursday, April 5th at St. Patrick's Cathedral where they will have music, dancing, and food. More information on the Stone Soup Group events can be found on their website.

### ADRD Home and Hope Intentional Neighborhoods

Mallory Hamilton reported that with regards to the intentional neighborhood, three homes are ready to move in, and every two weeks one more will be finished. She shared that her daughter's home will be ready June 1st, possibly sooner, which is exciting.

### ICC Update

Kim Champney briefly reported that Steve Lutzky presented a proposed assessment and support planning process via a flow chart. The flow chart outlined the process from intake through the person-directed support planning process and showed where the interRAI assessment tool would fit

EXHIBIT __\\__


in.

The next meeting of the ICC is scheduled for May 22nd where the topic will be the assessments and support planning process (ASP).

## Key Coalition/Campaign

Anne Applegate reported that there haven't been any new developments to report for Key Coalition.

## AD HOC WORK GROUPS

### Medicaid Update

Anne Applegate reported that there was nothing new to report from the Medicaid Ad Hoc Workgroup.

### Workforce Workgroup Update

Lanny Mommsen reported that they have finished the draft for the caregiver and employment barrier survey, and it has been forwarded to the Institutional Review Board for approval.

### FASD Work Group Update

Lanny Mommsen reported that the next FASD Workgroup meeting is scheduled for April 24th from 1 to 3 p.m. She reported that the film *Moments to Moments* was shown at the Bear's Tooth, and there was a panel discussion afterwards. She noted that it was very well attended. The film will be showing at UAA during Public Health Week.

Lanny Mommsen reported that Jenn Wagaman is going to be doing a FASD presentation at the Full Lives Conference.

### Supported Decision Making Update

Anne Applegate reported that HB 336 suffered a bit of a slowdown in order to add another amendment related to the lack of an agreement model form in the statute. The Council's objection was that they do not want that

EXHIBIT \_\_\_\_

Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/22/18   Page 59 of 66   of \_\_\_\_



because a regulation is an easier thing to change as they learn what kinds of things work and do not work as an agreement form. In the spirit of compromise, Anne relayed information and language to the legislative drafter, which then went through Representative Millett's office. They are waiting for a hearing in the Judiciary Committee. Anne noted that there is good support on the Judiciary Committee and once a hearing is scheduled, the Council has lined up a law professor from the University of Texas to testify regarding outcomes and usage of supported decision making in the three years they have been using them. They also have letters of support from lawyers and are working on getting a representative from the ACLU to speak in support of supported decision making.

Anne Applegate reported that they are planning to produce videos to educate DSPs and agency staff about supported decision making. To start, they plan to develop vignettes that model how to do an initial interview.

Anne Applegate shared that the keynote speech at the Full Lives Conference will be on supported decision making, and a showing of the movie *Body and Soul* will be used to frame the underlying principles of support for decisions. Anne noted that she will be presenting supported decision making at the Stone Soup Group Parent Conference.

## NEW BUSINESS

### Initial Cultural and Linguistic Competencies Plan Discussion

Anne Applegate directed the members' attention to the attachment Kristin Vandagriff sent of the inforgraphic on cultural and linguistic competency. Jeanne Gerhardt-Cyrus reviewed the infographic and recommended that the Council do a self-assessment to measure the Council's competency with regards to cultural inclusion, linguistic competency, and diversity. Patrick Reinhart offered to set up a meeting with Jeanne to discuss how best to go about doing that, and they will bring that back to the committee for discussion.

## OTHER

Heidi Kelly shared an upcoming event at the Sear's Mall in Anchorage Saturday, April 14th from 10 a.m. to 4 p.m. called Shining Abilities Craft Fair.

Governor's Council on Disabilities and Special Education

*DD Committee Meeting*
*April 4, 2018*

Page 9

EXHIBIT ⎯ 11 ⎯

Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/28/18   Page 60 of 66
Exhibit 11, Page 9 of 10

It is a craft fair that showcases the artistry and creative abilities of people who experience intellectual and developmental disabilities. Heidi noted that at noon, the artists will take the stage and share their stories and experiences.

Heidi Kelly shared that she will be presenting *Transitioning: From a Kid's, Parent's, and Autistic's Point of View* at the Stone Soup Group Parent Conference on Saturday from 12:45 to 1:30 p.m.

Heidi Kelly also shared the good news that she's become a grandparent again to a lovely new baby boy named Jeremiah.

## UPCOMING MEETINGS/CONFERENCES

**April 6 – 7, 2018**
Stone Soup Group Parent
Conference

**April 11 – 13, 2018**
Connecting to Full Lives

**April 14, 2018**
Shining Abilities Craft Fair
Sear's Mall, Anchorage

**April 16, 2018**
Autism Ad Hoc Quarterly Meeting

**April 24, 2018**
FASD Workgroup Quarterly
Meeting

**May 15, 2018**
Council Meeting

**May 23, 2018**
DD Collaborative Meeting

**July 9 – 11, 2018**
NACDD Conference in D.C.

## TIME AND DATE OF NEXT MEETING

The next regular DD Committee is scheduled for May 2, 2018 from 1:00 to 3:00 p.m.

## ADJOURNMENT

Lizette Stiehr **MOVED** to adjourn the meeting, **SECONDED** by Heidi Kelly. Hearing no objections, the motion **PASSED,** and the meeting adjourned at 2:45 p.m.

EXHIBIT ___\\\\___



RECEIVED

In the matter of:                              )
                                               )          JUN 0 5 2018
█████████████████████,                         )
                                               )    OAH No. 17-1192-MDS    Attorney General's Office
_____        )                           Juneau

## DIVISION'S PREHEARING BRIEF

The State of Alaska, Department of Health and Social Services, Division of
Senior and Disabilities Services (Division), hereby files this brief to assist the Office of
Administrative Hearings (OAH) with the issues raised by the Commissioner's office on
remand. The OAH has been asked to consider the arguments being raised in ████
████ Proposal For Action; so these issues are addressed.

### 1.    A group home is not an institution, and it is a waiver service.

An institution for purposes of 7 AAC 130.260 does *not* include assisted living
homes, group homes, and foster homes. This was addressed on page 3 of the proposed
decision, and that logic should stand. All residential settings allowed as part of a waiver
are considered to be community based. Group home, specifically, is a service under 7
AAC 130.265(f).

The purpose of home and community-based waiver services is to allow an
individual who would otherwise need the level of care provided in an institution to
receive necessary services in their community.[1] The State of Alaska currently offers

_____

[1]    7 AAC 130.200.

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

EXHIBIT 12

these 'waivers' to four categories of individuals.[2] Each type of 'waiver' defines the type of institutional care that the individual must require in order to be eligible for that waiver.[3] The option of a waiver allows that individual to remain in their community (which includes group homes) instead of at the institution *that the particular waiver* is designed for.[4] Therefore, it is only logical to interpret 7 AAC 130.260's reference to institutionalization to refer to that institution that the individual is choosing to avoid by choosing home and community-based services.

In this case, ▆▆▆▆▆ is enrolled in the waiver for individuals with intellectual and developmental disabilities under 7 AAC 130.205(d)(3). This means that the department has found that he meets the level of care that would be provided in an ICF/IID (Intermediate Care Facility for Individuals with Intellectual Disabilities). Thus, the relevant question in this case is whether ▆▆▆▆ needs more than 12 hours per week of day habilitation services in order to keep him out of an ICF/IID.bThe proposed decision finds that he does not. Therefore, it is the Division's position that the proposed decision should remain as is on this point.

**2.      It is outside the scope of a final agency decision to address issues regarding whether the state regulation is in violation of federal regulation.**

---

[2]      7 AAC 130.205.

[3]      7 AAC 130.205(d)(1)-(4) (these include an acute care hospital; the level of care provided in a nursing facility; and the level of care provided in an ICF/IID, or Intermediate Care Facility for Individuals with Intellectual Disabilities).

[4]      7 AAC 130.200.

*ITMO: M.P.*
Division's Prehearing Brief

OAH No. 17-1192-MDS
Page 2 of 3

EXHIBIT ___12



Case 1:18-cv-00008-HRH   Document 1-1   Filed 06/13/18   Page 63 of 66

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

"[T]he scope of the administrative law judge's review is limited to ascertaining whether the laws and policies have been properly applied in the case according to the record as it existed at the time the initial decision was made."[5] The scope of the authority of the final agency decision thus does not extend to deciding whether a particular state law violates federal law. Such questions are solely given to the authority of a superior court.[6]

**3. Even if it were within the scope of an agency decision, the state regulation does not violate federal law.**

None of the federal laws cited are applicable in this context to bar the Division from setting a cap on the service of day habilitation at 12 hours per week. The Rehabilitation Act relates to employment for people disabilities. The first citation from the Americans with Disabilities Act is in Congress' findings and does not confer a right to any particular service nor an amount desired by the recipient. It is unclear what the second citation to the ADA refers to given the information provided, but it appears to involve the responsibility of a school system for children.

DATED: February 22, 2018.

JAHNA LINDEMUTH
ATTORNEY GENERAL

By: _____

Elizabeth J. Smith
Assistant Attorney General
Alaska Bar No. 1012118

---

[5]   7 AAC 49.170.

[6]   Alaska Statute 22.10.010.

*ITMO: M.P.*
Division's Prehearing Brief

OAH No. 17-1192-MDS
Page 3 of 3

EXHIBIT 12

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

BEFORE THE ALASKA OFFICE OF ADMINISTRATIVE HEARINGS
ON REFERRAL BY THE COMMISSIONER OF THE DEPARTMENT OF HEALTH
AND SOCIAL SERVICES

In the matter of:

)
)
) OAH No. 17-1192-MDS
)

## CERTIFICATE OF SERVICE

I certify that on February 22, 2018, true and correct copies of the *Division's*

*Prehearing Brief* and this *Certificate of Service* were served via USPS Mail, First Class

on the following:



*a courtesy copy was faxed to:*
Conduent State Healthcare
Fax: (907) 644-8126

Rebecca Garcia
Law Office Assistant

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600



**CERTIFIED MAIL**™

Disability L~~ ~~
3330 Arctic
Anchorage, ~~ ~~

7006 2150 0003 2584 7077

 

US POSTAGE
$13.50
Priority Mail
Mailed From 99503
05/21/2018
032A 0061834915

RECEIVED

MAY 2 3 2018

Attorney General's Office
Juneau

ATTORNEY GENERAL
P.O. BOX 110300
JUNEAU, AK 99811-0300