**BEFORE THE ALASKA OFFICE OF ADMINISTRATIVE HEARINGS ON REFERRAL
BY THE COMMISSIONER OF HEALTH AND SOCIAL SERVICES**

| | |
|---|---|
| In the Matters of ) | |
| ) | OAH No. 17-1193-MDS |
| S. J. and O. J. ) | OAH No. 17-1194-MDS |
| ) | |
| ) | |

**FINAL DECISION AFTER REMAND**

A proposed decision after remand was issued on this consolidated case on June 6, 2018. After a review of the record and pleadings in this case, the undersigned, by delegation from the Commissioner of Health and Social Services, and in accordance with AS 44.64.060(e)(3) adopts the proposed decision in its entirety with the following clarification.

Alaska regulation 7 AAC 130.260(c) was amended to limit day habilitation services to 624 hours per year (an average of 12 hours per week for an entire year) unless a greater number is necessary to "protect the recipient's health and safety; and … prevent institutionalization."[1] Pursuant to the Alaska Administrative Procedure Act, that amendment was effective on October 1, 2017.[2] However, because the change to the regulation was substantive, *i.e.,* it reduced services available under the Alaska State Medicaid Intellectual and Developmental Disabilities Home and Community-Based Waiver, the change could not be enforced until it was approved by the federal Centers for Medicare and Medicaid Services (CMS). CMS approved the change effective March 20, 2018. The Division of Senior and Disabilities Services (Division) partially denied the J' request for day habilitation services, based upon the amended regulation, on October 27, 2017, prior to the March 20, 2018 CMS approval date. As a result, notwithstanding the fact that the applicable regulation was amended effective October 1, 2017, the Division's decision to deny the additional hours of day habilitation is reversed.

*Judicial review of this decision may be obtained by filing an appeal in the Alaska Superior Court in accordance with Alaska R. App. P. 602(a)(2) within 30 days after the date of this decision.*

DATED this 13th day of June, 2018.

By: *Signed*
Deborah Erickson
Project Coordinator
Department of Health and Social Services

---

[1] 7 AAC 130.260(c) (emphasis supplied). (Regulation in effect as of October 1, 2017; Register 223).
[2] *See* AS 44.62.180.

**BEFORE THE ALASKA OFFICE OF ADMINISTRATIVE HEARINGS ON REFERRAL BY THE COMMISSIONER OF HEALTH AND SOCIAL SERVICES**

| | |
|---|---|
| In the Matters of ) | |
| ) | OAH No. 17-1193-MDS |
| S. J. and O. J. ) | OAH No. 17-1194-MDS |
| ) | |
| ) | |

**DECISION AFTER REMAND[1]**

**I.     Introduction**

S. J. and O. J. are brothers. They are both autistic young men who receive Medicaid Home and Community-based Waiver (Waiver) services. Their individual 2017 – 2018 Medicaid Plans of Care (POC) included a request that they each receive a total of 30 hours per week of day habilitation services, consisting of 15 hours per week in individual day habilitation services and 15 hours per week of group day habilitation services. On October 27, 2017, the Division of Senior and Disabilities Services (Division) approved the J's POCs but limited the day habilitation services to 12 hours per week for each: 6 hours per week in individual day habilitation services and 6 hours per week of group day habilitation services. D. K., the J's mother and court appointed guardian, requested a hearing to challenge the partial denial of their day habilitation requests.

The J's hearing was held on January 22, 2018. Ms. K. represented the J's and testified on their behalf. Victoria Cobo represented the Division. Glenda Aasland and Corinna Castillo-Shepherd, both of whom are Health Program Managers with the Division, testified for the Division.

A proposed decision was issued on February 5, 2018. The delegee of the Commissioner of Health and Social Services, acting in her capacity as final decisionmaker, remanded the decision to "hold a supplemental hearing with the parties to allow them to address the 1915(c) HCBS waiver document filed with the Centers for Medicare & Medicaid Services." Briefing and a supplemental hearing followed. After consideration of the parties' arguments, this Decision After Remand replaces the proposed decision issued on February 5, 2018 in its entirety.

The Alaska Medicaid regulations were amended as of October 1, 2017 to limit day habilitation services to a maximum of 624 hours per year, which comes to an average of 12 hours

---

[1]   While these two cases were not formally consolidated, they involve identical factual and legal issues. Accordingly, a joint hearing was held on the two cases and a single decision is being issued.

per week for 52 weeks (one year). The applicable regulation allows an exception to that limit if the reduction in day habilitation services would result in a risk to a recipient's health and safety and place him or her at risk of institutionalization. The controlling federal Medicaid regulations explicitly provide that the federal Centers for Medicare and Medicaid Services (CMS) must approve substantive changes to Waiver services before they become effective. The change to the Alaska Medicaid day habilitation regulation was a substantive change because it reduced or limited available day habilitation services, a Waiver service. CMS did not approve the requested change until March 20, 2018, with an effective date of March 20, 2018. As a result, even though the change to the Alaska day habilitation service regulation was adopted as of October 1, 2017, that change could not be applied until March 20, 2018. Consequently, the Division's October 27, 2017 action denying a portion of the J's requested day habilitation services, based upon the day habilitation regulation change, cannot be supported as a matter of law, and is REVERSED.

## II.    Facts

S. J. and O. J. are 23-year-old brothers. They are both autistic and both receive Medicaid Waiver services through the Intellectual and Developmental Disabilities Waiver category. They live together semi-independently in an apartment, which is attached to their parents' home. In their POCs for 2016 – 2017, they were each approved for individual and group day habilitation services.[2] When they applied to renew their POCs for 2017 – 2018, they each requested that they receive 15 hours per week of individual day habilitation services and 15 hours per week of group habilitation services.[3] On October 27, 2017, the Division partially denied their requests, providing each with a total of 12 hours per week of day habilitation services, which consisted of 6 hours of individual day habilitation services per week and 6 hours of group day habilitation services per week.[4] This was a substantial reduction from the hours provided in their previous POCs.[5] The approved amount of day habilitation services for each came to 624 hours per year. The Division's reasoning was that the regulation had changed to cap the number of day habilitation hours to 624 hours per year, and that neither of the Js met the requirements for an exception to that cap, which required them to experience a threat to their health and safety and be at risk of institutionalization if the cap was not exceeded.[6]

---

[2]    Ex. F, p. 3 (S. J. – Case No. 17-1193-MDS); Ex. F, p. 3 (O. J. – Case No. 17-1194-MDS).
[3]    Ex. E, pp. 20 – 23 (S. J. – Case No. 17-1193-MDS); Ex, pp. 15- 21 (O. J. – Case No. 17-1194-MDS).
[4]    Ex. D (S. J. – Case No. 17-1193-MDS); Ex. D (O. J. – Case No. 17-1194-MDS).
[5]    *See* 2016 – 2017 list of services: Ex. F, p. 3 (S. J. – Case No. 17-1193-MDS); Ex. F, p. 3 (O. J. – Case No. 17-1194-MDS).
[6]    Ex. D (S. J. – Case No. 17-1193-MDS); Ex. D (O. J. – Case No. 17-1194-MDS); Ms. Aasland's testimony.

S. J. and O. J. are each physically fit energetic young men, who want to be independent. They require a fair amount of physical activity. They like to go on walks and hikes and they will disappear unless they are adequately supervised by trained staff. Even when they are on short excursions with people who know them well, such as when grocery shopping with their mother, they are capable of vanishing and are not found until an hour or two later. An extreme example of what can happen is shown by the fact that S. was lost overnight in the No Name in 2016.[7] The family has tried tracking devices and other measures, but those have been ineffective.[8]

### III. Discussion

The Medicaid program has a number of coverage categories. One of those coverage categories is the Waiver program.[9] The Waiver program pays for specified individual services to Waiver recipients, if each of those services is "sufficient to prevent institutionalization and to maintain the recipient in the community."[10] The Division must approve each specific service as part of the Waiver recipient's POC.[11]

The type of waiver services at issue here, day habilitation services, are provided outside the recipient's residence. The purpose of these services is to assist the recipient with acquiring, retaining, or improving his or her self-help, socialization, behavior, and adaptive skills. They may also reinforce skills taught in other settings, and promote the skills necessary for independence, autonomy, and community integration.[12] In 2016, the applicable Alaska regulation did not limit the number of day habilitation hours available to a recipient, unless the recipient also received group-home habilitation services:

> If the recipient of day habilitation services is also provided group-home habilitation services under 7 AAC 130.265(f), the department will not pay for more than 15 hours per week of day habilitation services from all providers combined, unless the department determines that the recipient is unable to benefit from any other community service or activities.[13]

The Alaska regulation governing day habilitation was amended to limit day habilitation services to 624 hours per year (an average of 12 hours per week for an entire year) unless a greater number was necessary to "protect the recipient's health and safety; and … prevent institutionalization."[14]

---

[7] Ms. K's testimony; Ex. E, p. 4 (S. J. – Case No. 17-1193-MDS).
[8] Ms. K's testimony.
[9] 7 AAC 100.002(d)(8); 7 AAC 100.502(d).
[10] 7 AAC 130.217(b)(1).
[11] 7 AAC 130.217(b).
[12] 7 AAC 130.260(b).
[13] 7 AAC 130.260(c). (Regulation in effect from July 1, 2013 through September 31, 2017).
[14] 7 AAC 130.260(c) (emphasis supplied). (Regulation in effect as of October 1, 2017; Register 223).

Ostensibly, the effective date of the amendment was October 1, 2017, but as will be seen below, the amendment did not become effective under governing law until a later date.

The Department of Health and Social Services (Department), in an undated submission[15] to CMS seeking approval of the change to day habilitation services, described it as follows:

> Adding limits to a service. This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year. The limit is not unduly conservative and is annualized in order to allow for seasonal fluctuation in usage. The State received and considered all public comment on the regulations proposing the limit on day habilitation, and consequently increased the limit that was initially proposed. The cap is 'soft' in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, **or** who have health and safety requirements affected by the limit, if justified in a plan of care or amendment.[16]

On or about March 9, 2018, the Department filed a revised submission with CMS where it changed the "or" bolded above to "and", thus aligning it with the actual language of the regulation:

> The cap is "soft" in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, **and** who have health and safety requirements affected by the limit, if justified in a plan of care or amendment.[17]

In that submission, the Department requested that the proposed effective date of the amendment be March 1, 2018.[18] CMS approved the Department's requested amendment effective March 20, 2018. CMS's approval letter reads, in part:

> [t]his amendment, submitted on January 4, 2018 made the following revisions:
>
> ∗∗∗
>
> • Amends Appendix C to include service limits on Day Habilitation;[19]

As an initial point, it must be noted that state Medicaid agencies are required to comply with federal requirements:

> Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals . . . Although participation in the program is

---

[15] See Attachment A to this decision. This one page would have been part of a multipage submission to CMS. However, only this one page is present in the record. This document is not contained on either the Department's or the Division's website.
[16] Attachment A (emphasis supplied).
[17] See March 9, 2018 email to CMS (Attachment B, p. 1) and Amendment Request (Attachment B, pp. 2 – 3). The complete application from March 9, 2018 is available online at http://dhss.alaska.gov/dsds/Documents/pdfs/IDD-ApprovedWaivers.pdf (date accessed May 24, 2018).
[18] Attachment B, p. 2.
[19] Attachment C, p. 1.

voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services (Secretary).[20]

Federal Medicaid regulations require that CMS must approve substantive changes to Waiver services before they become effective:

> (d) The agency may request that waiver modifications be made effective retroactive to the first day of a waiver year, or another date after the first day of a waiver year, in which the amendment is submitted, unless the amendment involves substantive changes as determined by CMS.
>
> > (1) Substantive changes include, but are not limited to, revisions to services available under the waiver including elimination or reduction of services, or reduction in the scope, amount, and duration of any service, a change in the qualifications of service providers, changes in rate methodology or a constriction in the eligible population.
> >
> > (2) A request for an amendment that involves a substantive change as determined by CMS, may only take effect on or after the date when the amendment is approved by CMS, and must be accompanied by information on how the State has assured smooth transitions and minimal effect on individuals adversely impacted by the change.[21]

The federal regulation cited above leads to the conclusion that the amendment to the Alaska day habilitation regulation was a substantive change, which had to be approved by CMS before it went into effect. CMS approved the amendment on March 20, 2018 effective March 20, 2018. This means that even though Alaska's change to its day habilitation regulation was adopted as of October 1, 2017, it could not enforce or apply that change until March 20, 2018.

The Division has strenuously argued that the new Alaska regulation must be enforced as written with an effective date of October 1, 2017. This argument is baffling. It ignores the federal requirements with which a state must comply as a condition for participation in the Medicaid program. It also ignores the fact that the Department issued a public notice on October 24, 2017, directed to "recipients, waiver service providers, and other stakeholders," asking for comments on proposed amendments to Alaska's Waivers before "these items are submitted to" CMS and specifically identifying one of the proposed amendments as being one to "[a]lign the service limit for day habilitation with adopted regulations."[22] It also ignores that Department's own submission of March 9, 2018, which asked for an effective date of March 1, 2018 – a date

---

[20] *Wilder v. VA. Hosp. Ass'n*, 496 US 498, 502 (1990).
[21] 42 C.F.R. § 441.304(d).
[22] Attachment D: "Notice of Amendments to Medicaid Waivers and Proposed New Medicaid Waiver." https://aws.state.ak.us/OnlinePublicNotices/Notices/View.aspx?id=187510 (date accessed May 25, 2018).

several months after October 1, 2017. Having asked for an effective date in March of 2018, and received an effective date in March of 2018, the Department obtained a regulation that appeared on the books in 2017 but became effective in March of 2018.

No regulation can be applied before its effective date. This decision does not declare the regulation invalid. It merely addresses the date when the Division can begin applying the regulation as written. That effective date is March 20, 2018, the effective date approved by CMS. As a result, the October 27, 2017 partial denial of the J's request for day habilitation services must be reversed.

There is an alternative ground for ruling in favor of the Js in this case. That is because in its initial communications with CMS, the Department represented that the change to the day habilitation regulation limiting day habilitation hours to 624 hours per year (12 hours per week) allowed "approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, **or** who have health and safety requirements affected by the limit."[23] While the Department subsequently changed its position to CMS, stating instead that exceeding the limit was allowable for "individuals who are at risk of institutionalization within 30 days, **and** who have health and safety requirements affected by the limit,"[24] that change in the Department's representation did not occur until March 9, 2018. Accordingly, the Department's official position, up until March 9, 2018, was that the regulation allowed the limit to be exceeded for "individuals who are at risk of institutionalization within 30 days, **or** who have health and safety requirements affected by the limit." The Department is bound by this position for actions preceding March 20, 2018, the date of final approval by CMS.

The undisputed evidence in this case demonstrates that there are legitimate safety concerns for both S. J. and O. J. due to their propensity to wander. Day habilitation services help to keep them both safe. On its face, *assuming arguendo* that the regulation was enforceable beginning October 1, 2017, this justifies exceeding the limits contained in the day habilitation regulation at the time the Division made its October 27, 2017 decision denying the Js day habilitation services over the 624 hour yearly limit.

It must also be noted that Ms. K. voiced legitimate concerns that without day habilitation services, the Js would both be forced into a group home instead of the degree of independence they are currently afforded. Ms. K argued that a group home is an institution.

---

[23] Attachment A (emphasis supplied).
[24] Attachment B, p. 2 (emphasis supplied).

The applicable regulations do not define the terms institution or institutionalization.[25] However, day habilitation services are only available to individuals who are in a residential setting, *i.e.,* a non-institutional setting. Residential settings include assisted living homes, group homes, and foster homes.[26] It therefore follows that assisted living homes, group homes, and foster homes are not "institutions."

Bearing in mind that a group home is not an "institution," there is no evidence that either S. J. or O. J. have any serious behavioral or psychological issues that could place them in an institution of some type such as an in-patient treatment center or a psychiatric hospital. While day habilitation services help to assure their safety, the evidence does not show that it is more likely true than not true that either faces institutionalization unless they each receive more than 12 hours per week of day habilitation services.

In summary, the history of the regulation demonstrates that the change limiting day habilitation hours was not approved by CMS until March 20, 2018 with an effective date of March 20, 2018. As a result, even though the amendment to the regulation was in place on October 1, 2017, the Department could not apply it until March 20, 2018. Alternatively, the Js have demonstrated that their request for day habilitation services was necessary for their health and safety. Accordingly, the Division's partial denial of S. J.'s and O. J. requests for day habilitation services is reversed.

### IV. Conclusion

The Division's partial approval of S. J.'s and O. J.'s request for day habilitation services for 12 hours per week (624 hours per year), rather than the 30 hours per week that were requested for each, is reversed. Their requests for day habilitation services are approved in full.

DATED this 6th day of June, 2018.

By: *Signed*
Lawrence A. Pederson
Administrative Law Judge

---

[25] The general Medicaid regulations contain definitions for "medical institution," (7 AAC 100.990(29)), but none for the generic term "institution" or "institutionalization." *See* 7 AAC 100.990 (General Medicaid regulations); 7 AAC 130.319 (Medicaid Waiver regulations); 7 AAC 160.990 (General Medicaid Definitions).
[26] 7 AAC 130.260(b); 7 AAC 130.265(b)(1) and (f)..

| | |
|---|---|
| Last Name: | Sherwood |
| First Name: | Jon |
| Title: | Deputy Commissioner for Medicaid and Health Care Policy |
| Agency: | Department of Health and Social Services |
| Address: | PO Box 110601 |
| Address 2: | |
| City: | Juneau |
| State: | Alaska |
| Zip: | 99811 |
| Phone: | (907) 465-5830　Ext:　☐ TTY |
| Fax: | (907) 465-1170 |
| E-mail: | jon.sherwood@alaska.gov |

## Attachments

**Attachment #1: Transition Plan**
Check the box next to any of the following changes from the current approved waiver. Check all boxes that apply.
- ☐ Replacing an approved waiver with this waiver.
- ☐ Combining waivers.
- ☐ Splitting one waiver into two waivers.
- ☐ Eliminating a service.
- ☐ Adding or decreasing an individual cost limit pertaining to eligibility.
- ☒ Adding or decreasing limits to a service or a set of services, as specified in Appendix C.
- ☐ Reducing the unduplicated count of participants (Factor C).
- ☐ Adding new, or decreasing, a limitation on the number of participants served at any point in time.
- ☒ Making any changes that could result in some participants losing eligibility or being transferred to another waiver under 1915(c) or another Medicaid authority.
- ☐ Making any changes that could result in reduced services to participants.

Specify the transition plan for the waiver:

Adding limits to a service: This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year. The limit is not unduly conservative, and is annualized in order to allow for seasonal fluctuation in usage. The State received and considered all public comment on the regulations proposing the limit on day habilitation, and consequently increased the limit that was initially proposed. The cap is "soft" in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, or who have health and safety requirements affected by the limit, if justified in a plan of care or amendment. The transition to a cap on day habilitation will done at a participant's annual plan of care renewal, which will include a renewed emphasis on natural supports and other programs and services identified through the person-centered planning process.

Making any changes that could result in some participants being transferred to another Medicaid authority: Waiver recipients who receive only a Personal Emergency Response System (PERS) through the Specialized Medical Equipment service and care coordination will be offered the option of enrolling in the State's 1915 (k) Community First Choice (CFC) program. The terms and conditions of the PERS will remain the same under CFC; ongoing service provided by a care

Attachment A; page 1 of 1　　[S/faces/protected/35/print/Print... 10/20/2017
Case 1:18-cv-00008-HRH   Document 5-4   Filed 06/27/18   Page 9 of 16
Exhibit 13
Page 9 of 16

| | |
|---|---|
| From: | Etheridge, Deb J (HSS) |
| To: | Smith, Elizabeth J (LAW) |
| Cc: | Whittaker, Jetta L (HSS) |
| Subject: | FW: AK's 0260,0261,0262,0263 waiver amendments |
| Date: | Friday, March 30, 2018 11:20:59 AM |

From: Abarabar, Shante L. (CMS/CMCHO) [mailto:Shante.Abarabar@cms.hhs.gov]
Sent: Friday, March 09, 2018 12:41 PM
To: Etheridge, Deb J (HSS)
Cc: Whittaker, Jetta L (HSS)
Subject: Re: AK's 0260,0261,0262,0263 waiver amendments

Thanks guys!!!

On: 09 March 2018 13:40,
"Etheridge, Deb J (HSS)" <deb.etheridge@alaska.gov> wrote:

The State amended the following waivers to comport with regulatory language:

- AK.0260.R05.02 (People with Intellectual and Developmental Disabilities)
- AK.0262.R05.02 (Adults with Physical and Developmental Disabilities)
- AK.0263.R05.02 (Children with Complex Medical Conditions)

The State amended "or" to "and" in the following sections:
1) narrative for Day Hab in the Transition Plan located in Main, A, Attachment #1
2) narrative for Day Hab service limits

*Deb Etheridge, Deputy Director*
*Senior and Disabilities Services*
*State of Alaska*
*907-465-5481*

From: Abarabar, Shante L. (CMS/CMCHO) [mailto:Shanta.Abarabar@cms.hhs.gov]
Sent: Friday, March 09, 2018 11:35 AM
To: Etheridge, Deb J (HSS)
Cc: Whittaker, Jetta L (HSS)
Subject: RE: AK's 0260,0261,0262,0263 waiver amendments

Appreciate the additional catch and I'll let my CO partner know we can do a final look and move these on to management for approval.

# Application for a §1915(c) Home and Community-Based Services Waiver

## PURPOSE OF THE HCBS WAIVER PROGRAM

The Medicaid Home and Community-Based Services (HCBS) waiver program is authorized in §1915(c) of the Social Security Act. The program permits a State to furnish an array of home and community-based services that assist Medicaid beneficiaries to live in the community and avoid institutionalization. The State has broad discretion to design its waiver program to address the needs of the waiver's target population. Waiver services complement and/or supplement the services that are available to participants through the Medicaid State plan and other federal, state and local public programs as well as the supports that families and communities provide.

The Centers for Medicare & Medicaid Services (CMS) recognizes that the design and operational features of a waiver program will vary depending on the specific needs of the target population, the resources available to the State, service delivery system structure, State goals and objectives, and other factors. A State has the latitude to design a waiver program that is cost-effective and employs a variety of service delivery approaches, including participant direction of services.

## Request for an Amendment to a §1915(c) Home and Community-Based Services Waiver

### 1. Request Information

A. The State of Alaska requests approval for an amendment to the following Medicaid home and community-based services waiver approved under authority of §1915(c) of the Social Security Act.
B. Program Title:
   People with Intellectual and Developmental Disabilities
C. Waiver Number: AK.0260
   Original Base Waiver Number: AK.0260.90.R2
D. Amendment Number: AK.0260.R05.02
E. Proposed Effective Date: *(mm/dd/yy)*
   03/01/18
   Approved Effective Date: 03/20/18
   Approved Effective Date of Waiver being Amended: 07/01/16

### 2. Purpose(s) of Amendment

Purpose(s) of the Amendment. Describe the purpose(s) of the amendment:
The purpose of this amendment is to:
* Amend the Brief Waiver Description to clarify the roles of the State and other entities
* Update Appendix A to reflect the relationship between Senior and Disabilities Services, providing waiver services management, and the Commissioner's Office in its role as the State Medicaid Plan Director
* Amend Appendix B to include Reserved Capacity in the unduplicated number of individuals, to allow transfer from another waiver to this waiver if a recipient's health and safety can no longer by guaranteed on the original waiver, and to clarify the processes for selection of applicants and evaluating level of care
* Amend Appendix C to remove Personal Emergency Response Systems from Specialized Medical Equipment
* To avoid duplication between waiver and State Plan services, the applicant's initial waiver application and the participant's annual plan of care are removed as care coordination waiver services in Appendix C, contingent upon approval of the Long Term Services and Supports Targeted Case Management State Plan Option
* Amend Appendix C to include service limits on Day Habilitation. The transition to the cap for day habilitation is done at a participant's annual plan of care renewal, which will include a renewed emphasis on natural supports and other programs and services identified through the person-centered planning process
* Amend Appendix G to update critical incident reporting and response procedures, per current regulation and practice

### Attachment #1: Transition Plan
Check the box next to any of the following changes from the current approved waiver. Check all boxes that apply.
- ☐ Replacing an approved waiver with this waiver.
- ☐ Combining waivers.
- ☐ Splitting one waiver into two waivers.
- ☐ Eliminating a service.
- ☐ Adding or decreasing an individual cost limit pertaining to eligibility.
- ☑ Adding or decreasing limits to a service or a set of services, as specified in Appendix C.
- ☐ Reducing the unduplicated count of participants (Factor C).
- ☐ Adding new, or decreasing, a limitation on the number of participants served at any point in time.
- ☐ Making any changes that could result in some participants losing eligibility or being transferred to another waiver under 1915(c) or another Medicaid authority.
- ☐ Making any changes that could result in reduced services to participants.

Specify the transition plan for the waiver:

Adding limits to a service or set of services:

Day Habilitation: This waiver amendment places limits on the amount of day habilitation a recipient can receive in one year. The limit is not unduly conservative, and is annualized in order to allow for seasonal fluctuation in usage. The State received and considered all public comment on the regulations proposing the limit on day habilitation, and consequently increased the limit that was initially proposed. The cap is ""soft" in that the regulation allows approval in excess of the limit when requested for individuals who are at risk of institutionalization within 30 days, and who have health and safety requirements affected by the limit, if justified in a plan of care or amendment. The transition to a cap on day habilitation will done at a participant's annual plan of care renewal, which will include a renewed emphasis on natural supports and other programs and services identified through the person-centered planning process.

Personal Emergency Response System: There are no waiver recipients who receive only Personal Emergency Response System (PERS) through the Specialized Medical Equipment service. Waiver recipients receiving PERS as a service in their person centered support plan will be transferred to the State's 1915(k) Community First Choice (CFC) program for the purpose of retaining the PERS service, and will continue to be eligible for waiver service, including but not limited to care coordination. The terms and conditions of the PERS will remain the same under CFC. To avoid duplication of State Plan and waiver services, the approval of this waiver amendment should align with approval of the State's 1915(k) option.

### Attachment #2: Home and Community-Based Settings Waiver Transition Plan
Specify the state's process to bring this waiver into compliance with federal home and community-based (HCB) settings requirements at 42 CFR 441.301(c)(4)-(5), and associated CMS guidance.
*Consult with CMS for instructions before completing this item. This field describes the status of a transition process at the point in time of submission. Relevant information in the planning phase will differ from information required to describe attainment of milestones.*
*To the extent that the state has submitted a statewide HCB settings transition plan to CMS, the description in this field may reference that statewide plan. The narrative in this field must include enough information to demonstrate that this waiver complies with federal HCB settings requirements, including the compliance and transition requirements at 42 CFR 441.301(c)(6), and that this submission is consistent with the portions of the statewide HCB settings transition plan that are germane to this waiver. Quote or summarize germane portions of the statewide HCB settings transition plan as required.*
*Note that Appendix C-5 HCB Settings describes settings that do not require transition; the settings listed there meet federal HCB setting requirements as of the date of submission. Do not duplicate that information here.*
*Update this field and Appendix C-5 when submitting a renewal or amendment to this waiver for other purposes. It is not necessary for the state to amend the waiver solely for the purpose of updating this field and Appendix C-5. At the end of the state's HCB settings transition process for this waiver, when all waiver settings meet federal HCB setting requirements, enter "Completed" in this field, and include in Section C-5 the information on all HCB settings in the waiver.*

The State assures that the settings transition plan included with this waiver amendment will be subject to any provisions or requirements included in the State's approved Statewide Transition Plan. The State will implement any required changes upon approval of the Statewide Transition Plan and will make conforming changes to this waiver when it submits the next amendment or renewal.

Attachment B; page 3 of 3
Case 1:18-cv-00008-HRH   Document 5-4   Filed 06/27/18   Page 12 of 16
Exhibit 13
Page 12 of 16

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Seattle Regional Office
701 Fifth Avenue, Suite 1600, MS/RX-200
Seattle, WA 98104



Division of Medicaid & Children's Health Operations

---

March 20, 2018

Valerie Davidson, Commissioner
Department of Health and Social Services
3601 C Street, Suite 902
Anchorage, Alaska 99503

RE: Approval of 1915 (c) Home and Community Based Services (HCBS) Waiver
AK.0260.R05.02

Dear Ms. Davidson:

The Centers for Medicare & Medicaid Services (CMS) is approving Alaska's §1915(c) People with Intellectual and Developmental Disabilities Waiver amendment, CMS Transmittal Number AK.0260.R05.02. Please use this number in future correspondence relevant to this amendment request.

This amendment, submitted on January 4, 2018 made the following revisions:

- Amends the Brief Waiver Description to clarify the roles of the state and other entities;
- Updates Appendix A to reflect the relationship between Senior and Disabilities Services, providing waiver services management, and the Commissioner's Office in its role as the State Medicaid Plan Director;
- Amends Appendix B to include Reserved Capacity in the unduplicated number of individuals, to allow transfer from another waiver to this waiver if a recipient's health and safety can no longer by guaranteed on the original waiver, and to clarify the processes for selection of applicants and evaluating level of care;
- Amends Appendix C to remove Personal Emergency Response Systems from Specialized Medical Equipment;
- Amends Appendix C to avoid duplication between waiver and State Plan services, the applicant's initial waiver application and the participant's annual plan of care are removed as care coordination waiver services;
- Amends Appendix C to include service limits on Day Habilitation;
- Amends Appendix G to update critical incident reporting and response procedures, per current regulation and practice;
- Amends Appendix I to update financial accountability procedures, to reflect current practice;

Page 2 – Ms. Davidson

- Amends Appendix J to remove utilization estimates for Personal Emergency Response Systems from Specialized Medical Equipment; and
- Corrects reporting details of several Quality Improvement performance measures in Appendices C, D, G and I.

The AK.0260.R05.02 waiver amendment continues to be cost-neutral and is approved effective March 20, 2018.

The CMS appreciates the efforts and cooperation of Alaska's Division of Senior and Disability Services leadership and staff throughout this Waiver amendment review process. If there are any questions concerning this approval, please contact me or your staff may contact Shante Abarabar at (206) 615-2346 or via Email at shante.abarabar@cms.hhs.gov.

Sincerely,

*David L. Meacham*

David L. Meacham
Associate Regional Administrator

cc:
Duane Mayes, Division Director, Division of Senior and Disability Services
Deb Etheridge, Deputy Director, Division of Senior and Disability Services

# Notice of Amendments to Medicaid Waivers and Proposed New Medicaid Waiver

PUBLIC NOTICE – REQUEST FOR COMMENTS

The Department of Health and Social Services, Division of Senior & Disabilities Services (SDS) is requesting comment from recipients, waiver service providers, and other stakeholders on amendments to Alaska's four home and community based services waivers and on a new waiver application before these items are submitted to the Centers for Medicare and Medicaid Services (CMS).

The proposed amendments align the waivers with new long term services and supports programs initiated by SDS. The proposed Community First Choice (CFC, also known as 1915(k) program and the Long Term Services and Supports Targeted Case Management (LTSS TCM) State Plan Option will be submitted to CMS for approval at the same time as the new waiver and waiver amendments are submitted, so that all changes have the same effective date.

The amendments propose to:

- Remove Personal Emergency Response Systems (PERS) from the service definition of Specialized Medical Equipment, as PERS is allowable under CFC. (All waivers)

- Remove the initial waiver application and development of a participant's annual support plan from the service definition and rate chart for care coordination, as these tasks will be provided as LTSS TCM. (All waivers)

- Align the service limit for day habilitation with adopted regulations. (All but the Alaskans Living Independently waiver)

- Add reserved capacity slots and clarify the process for selection of entrants to the Intellectual and Developmental Disabilities (IDD) waiver.

- Make technical corrections to several quality improvement measures. (All waivers)

The proposed Individualized Supports Waiver (ISW) includes these features:

- Many of the same services and providers available on the IDD waiver

- An individual cost limit of $17,500 per year

- A limit of 600 participants on the waiver at any one time, selected from the Developmental Disabilities Registration and Review (DDRR) ISW waiting list

The approved waivers and the proposed amendments, as well as the proposed ISW, can be viewed at http://dhss.alaska.gov/dsds/Pages/AK-HCBS-waivers.aspx. Copies of the proposed amendments and ISW will also be available for viewing at SDS offices in Anchorage (550 W. 8th Ave.), Juneau (240 Main St., Suite 601) and Fairbanks (400 Gambell St., Suite 303).

SDS will accept public comment on these amendments until **5:00 pm November 27, 2017**. Please send written comments to Jetta Whittaker, PO Box 110680, Juneau AK 99811, or jetta.whittaker@alaska.gov.

Attachments, History, Details

Details

Attachment D, page 1 of 2
Case 1:18-cv-00008-HRH   Document 5-4   Filed 06/27/18   Page 15 of 16
Exhibit 13
Page 15 of 16

**Attachments**
None

**Revision History**
Created 10/20/2017 4:07:13 PM by jlwhittaker
Modified 10/24/2017 11:10:50 AM by Jlwhittaker

Department: Health and Social Services
Category: Public Notices
Sub-Category:
Location(s): Statewide
Project/Regulation #:

Publish Date: 10/24/2017
Archive Date: 11/27/2017

Events/Deadlines: